**The STATE of Ohio, Appellee,**

v.

**GRANT, Appellant.**

[Cite as *State v. Grant* (1995), 103 Ohio App.3d 28.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

No. 94CA005838.

Decided April 26, 1995.

**30**

———

*Gregory A. White,* Lorain County Prosecuting Attorney, and *Lisa Milasky,* Assistant Prosecuting Attorney, for appellee.

*Hollace Weizel,* for appellant.

BAIRD, Presiding Judge.

Aaron Grant appeals from the judgment of the Lorain County Court of Common Pleas convicting him of two counts of drug abuse, in violation of R.C. 2925.11. Because we hold that the delay in bringing him to trial violated his right to a speedy trial, we reverse.

In December 1991, while he was incarcerated there on other charges, officials at the Lorain Correctional Institution selected Grant for a random drug screen. On December 26, 1991, the testing center of the Department of Rehabilitations and Corrections generated a report showing the presence of marijuana and cocaine in Grant's urine. The urine sample and the actual test readings upon which this report was based were destroyed, pursuant to administrative policy, six months later.

On January 28, 1992, the Lorain County Grand Jury returned an indictment against Grant, charging him with two counts of drug abuse. Approximately two months after the indictment was returned, Grant was transferred to the Mansfield Correctional Institution and from there to the Southern Ohio Correctional Institution. He was transported back to the Lorain Correctional Institution on June 16, 1993, where the indictment was served. Sometime later, he was returned to the Southern Ohio Correctional Institution, whence he was transferred back to Lorain County for several hearings and to serve his sentence related to the convictions at issue in this appeal.

On June 21, 1993, the trial court appointed counsel to represent him, and Grant pleaded not guilty to both charges. He also moved for a bill of particulars and requested discovery from the state. The state's response to the discovery request included the drug screen report, but not the test readings or urine sample.

On July 30, 1993, Grant filed a motion to dismiss the indictment on the ground that his right to a speedy trial had been violated. The delay of which he complained was the more than seventeen-month period between January 28, 1992, and June 16, 1993. A hearing was held and, on August 27, 1993, the court denied the motion to dismiss, finding that Grant had been unavailable to the court until service of the indictment.

A jury trial was held on March 23 and 24, 1994. The state presented the drug screen report and the testimony of several Corrections Department employees who had been involved with the drug screen. Grant, who offered no witnesses, objected to the admission of the drug screen reports. The jury found Grant guilty of both counts of drug abuse, and the court sentenced him to a term of incarceration and a fine. The court denied Grant's postconviction motion for acquittal on April 4, 1994.

Grant now appeals, asserting four assignments of error. Because the disposition of the first assignment of error renders the remaining assignments of error moot, we will not consider them. App.R. 12(A)(1)(c).

### Assignment of Error I

The trial court erred to the prejudice of appellant and in violation of rights conferred by O.R.C. § 2925.71 [*sic*, 2945.71], O.R.C. § 2925.72 [*sic*, 2945.72], O.R.C. § 2945.73, O.R.C. § 2941.401, Article I, Section 10 of the Ohio Constitution, and the Sixth and Fourteenth Amendments to the Constitution of the United States, when it denied appellant's motion to dismiss.

■ In his first assignment of error, Grant argues that he was denied a speedy trial because he was not served with the indictment until more than seventeen months after the grand jury issued it.[1] He argues that the trial court was required to dismiss the indictment because of this delay. Grant bases this argument on three grounds: (1) the right to a speedy trial guaranteed by the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution,[2] (2) the requirement that a person against whom a felony charge is pending be brought to trial within two hundred seventy days of his arrest, and (3) the right to due process guaranteed by both the Fourteenth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution. Because the Sixth Amendment guarantee is dispositive of this case, we consider it alone.

Grant argues that the delay between his indictment and its service falls under the purview of the Sixth Amendment. He further argues that a consideration of the facts surrounding the delay must result in a finding that his right to a speedy trial was violated. The state argues that the Sixth Amendment's guarantee of a speedy trial does not contemplate any period prior to arrest. It further argues that, even if this court analyzes the delay under the Sixth Amendment, Grant has failed to show that there was a violation.

■ The constitutional guarantee of a speedy trial is not limited in scope to the period following formal arrest. *Doggett v. United States* (1992), 505 U.S. 647,

---

1. Though Grant cites R.C. 2925.71 and R.C. 2925.72, in context it is reasonable to assume he means R.C. 2945.71 and R.C. 2945.72, as the former set does not exist and the latter governs speedy trial rights.

2. The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial * * *." This right is made applicable to state prosecutions by the Fourteenth Amendment. *Klopfer v. N. Carolina* (1967), 386 U.S. 213, 222, 87 S.Ct. 988, 993, 18 L.Ed.2d 1, 7–8. Section 10, Article I of the Ohio Constitution similarly provides: "In any trial, in any court, the party accused shall be allowed * * * to have * * * a speedy public trial * * *."

112 S.Ct. 2686, 120 L.Ed.2d 520. In *Doggett,* the United States Supreme Court held that the delay between the indictment and arrest violated the defendant's right to a speedy trial. *Id.,* 505 U.S. at 648–649, 112 S.Ct. at 2689, 120 L.Ed.2d at 526. *Doggett* considered an eight-and-one-half-year delay between the defendant's indictment and his arrest, in which the government's attempt to promptly serve the indictment had been unsuccessful because the defendant had fled the country. Authorities soon abandoned their attempts to track the defendant's whereabouts. About two and one-half years after his indictment, which was still unknown to him, the defendant reentered the United States. His presence in this country went unnoticed by the criminal justice system until six more years had passed. After his name and address appeared on a credit check, federal officials arrested the defendant.

Although the period of delay in *Doggett* was considerably longer than in Grant's case, a significant feature of that case is that the court regarded the period between indictment and arrest as coming under the speedy trial protection afforded by the Sixth Amendment. The state's reliance upon *State v. Marion* (1971), 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468, to support its argument that the court has declined to extend speedy trial rights to any period preceding formal arrest is, therefore, misplaced.

Moreover, a careful reading of that case fails to bear out such an interpretation. In *Marion,* the criminal defendants claimed that their speedy trial rights were violated by an approximately three-year delay between the last criminal act charged and the return of the indictment. The state correctly observes that the court declined to extend constitutional speedy trial rights to these defendants, but the reason it did so was that the delay occurred before they were accused. The court held that "the Sixth Amendment speedy trial provision has no application until the putative defendant in some way becomes an 'accused,' an event that occurred in this case only when the [defendants] were indicted * * *." *Id.,* 404 U.S. at 313, 92 S.Ct. at 459, 30 L.Ed.2d at 474.[3]

Thus, *Marion* in no way precludes application of the Sixth Amendment to the more than seventeen months between the date Grant's indictment was filed and the date he was served with the indictment. The fact that Grant was not detained on the new charges during this time is inconsequential. The court allowed for such circumstances when it held that "it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy

---

3. We acknowledge that the court used these words, upon which the state relies: "we decline to extend the reach of the amendment to the period prior to arrest." *Marion,* 404 U.S. at 321, 92 S.Ct. at 463–464, 30 L.Ed.2d at 479. However, from the context of the entire opinion, we conclude that the court was using the word "arrest" to stand for any accusation.

trial provision of the Sixth Amendment." *Id.,* 404 U.S. at 320, 92 S.Ct. at 463, 30 L.Ed.2d at 479.

Once the triggering event, that is the accusation, occurs, the court must evaluate whether the ensuing delay violated the accused's right to a speedy trial. The *Doggett* Court employed a two-pronged analysis in making this evaluation. First, it asked whether the accused had alleged that the interval between accusation and trial had "crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Id.,* 505 U.S. at 651–652, 112 S.Ct. at 2690, 120 L.Ed.2d at 528, citing *Barker v. Wingo* (1972), 407 U.S. 514, 530, 92 S.Ct. 2182, 2191–2192, 33 L.Ed.2d 101, 117. Second, the accused having made this showing, the court considered the four factors it had set out in *Barker* for assessing speedy trial claims. *Doggett,* 505 U.S. at 651–658, 112 S.Ct. at 2690–2694, 120 L.Ed.2d at 528–532.

■ With respect to the first prong, we hold that Grant has made the threshold showing that the seventeen-month delay between indictment and service was presumptively prejudicial. As the *Doggett* court noted with approval, "courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year." *Id.,* 505 U.S. at 652, fn. 1, 112 S.Ct. at 2691, fn. 1, 120 L.Ed.2d at 528, fn. 1.

■ Once a period of "presumptively prejudicial" delay is in view, we must proceed to the second prong of the analysis. In *Barker,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2191–2292, 33 L.Ed.2d 101, 116–117, the court adopted a balancing test in which it identified four factors to be weighed in determining whether a defendant's right to a speedy trial had been violated: (1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) the prejudice to the defendant.

With respect to the first factor, the facts weigh in Grant's favor. Seventeen months, in the context of this sort of relatively simple prosecution where the state was able to rely solely on evidence to which it had access at the time of the indictment, is an unnecessarily long period of delay. See *Barker,* 407 U.S. at 530–531, 92 S.Ct. at 2191–2192, 33 L.Ed.2d at 117. The state calls our attention to this court's decision in *State v. Williams* (Apr. 20, 1994), Medina App. No. 2273–M, unreported, 1994 WL 135309, in which we held that a sixteen-year delay was not a violation of the defendant's speedy trial right. In that case, we discussed whether the government or the criminal defendant was more at fault for the delay, the second *Barker* factor. Because the delay was caused by the defendant's repeatedly fleeing the state, we held that the delay, as long as it was, was justifiable. *Id.* at 5. In Grant's case, consideration of that same factor produces a different result.

██ With respect to the second factor, the reason for the delay, we must be aware of the differing weights that should be assigned to different reasons:

"A deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighed less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay." *Barker*, 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117.

In the case before us, the trial court found that Grant was unavailable to the court during the time he was incarcerated in prisons outside Lorain County. This is the only explanation we can discover for the prosecution's delay. The state makes no independent attempt to justify the delay at all. We agree with Grant that, under these circumstances, the state negligently failed to make a good faith effort to serve the indictment within a reasonable time. See *Dickey v. Florida* (1970), 398 U.S. 30, 36, 90 S.Ct. 1564, 1568, 26 L.Ed.2d 26, 31, in which the court noted that the federally imprisoned defendant had been available to state authorities for service of an arrest warrant at all times during the delay.

With respect to the third factor, the defendant's assertion of his right to a speedy trial, the facts are again in Grant's favor, even though he did not assert his right during the delay. Although Grant acknowledges that he was aware, at least generally, of the test results, he was unaware of the criminal charges against him until he was served with the indictment. Grant's ignorance of the indictment prevented him from asserting his speedy trial rights.

██ We now turn to the fourth factor, prejudice to the defendant. The court observed in *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d at 118, that:

"Prejudice * * * should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired."

The *Doggett* court emphasized that the most serious form of prejudice in this context is " 'the possibility that the [accused's] defense will be impaired' by loss of exculpatory evidence." *Doggett*, 505 U.S. at 654, 112 S.Ct. at 2692, 120 L.Ed.2d at 529–530. The reason this is the most serious form of prejudice to the accused is that "the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d at 118.

As did the accused in *Doggett,* Grant claims this kind of prejudice only, that is, that the delay in serving his indictment made it impossible for him to have access to the only direct evidence in the state's case against him. He argues that, because he was unaware of the indictment against him, he had little reason to request that the urine sample be preserved for independent analysis.[4] Without the opportunity for this independent analysis, he was unable to meet the state's case. As the *Dickey* court observed, this is a foundational value protected by the Sixth Amendment:

"The right to a speedy trial is not a theoretical or abstract right but one rooted in hard reality in the need to have charges promptly exposed. If the case for the prosecution calls on the accused to meet charges rather than rest on the infirmities of the prosecution's case, as is the defendant's right, the time to meet them is when the case is fresh. Stale claims have never been favored by the law, and far less so in criminal cases. Although a great many accused persons seek to put off the confrontation as long as possible, the right to a prompt inquiry into criminal charges is fundamental and the duty of the charging authority is to provide a prompt trial." *Id.* at 398 U.S. 37–38, 90 S.Ct. at 1568–1569, 26 L.Ed.2d at 32.

Grant's ability to mount a defense was substantially prejudiced by the delay in serving his indictment. By the time of service, his only means of meeting the state's case had been destroyed. Had the state served the indictment promptly, as it could have done, Grant would have had the fair trial which the Constitution guarantees.

The state in this case did not provide a prompt trial. While delays are sometimes justified and the circumstances of some cases may warrant a finding that a delay did not violate the speedy trial protection of the Sixth Amendment, this is not the case here. As the court in *Barker* affirmed, the remedy for the deprivation of an accused's right to a speedy trial is dismissal of the indictment; indeed, it is the only remedy possible. *Barker,* 407 U.S. 514, 522, 92 S.Ct. 2182, 2187–2188, 33 L.Ed.2d 101, 112. Accordingly, the judgment of the trial court is reversed and the cause is remanded to the trial court to dismiss the indictment.

*Judgment reversed.*

DICKINSON, J., concurs.

SLABY, J., dissents.

---

**4.** Grant acknowledges that he could have, within the six months following the urinalysis, challenged the results of the tests that resulted in administrative penalties against him within the prison system. He maintains that, because they were comparatively inconsequential, the administrative penalties were insufficient to warrant a challenge.

SLABY, Judge, dissenting.

I respectfully dissent. The Supreme Court of the United States, in *Doggett v. United States* (1992), 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520, held that an eight-and-one-half-year delay between the defendant's indictment and arrest constituted a violation of the Sixth Amendment's right to a speedy trial. The Supreme Court stated not only that such an *extraordinary* delay constitutes presumptive prejudice, thereby triggering the four-factored inquiry of *Barker v. Wingo* (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, but that the defendant need not specify how he was prejudiced by the delay absent extenuating circumstances or rebuttal evidence. *Doggett,* 505 U.S. at 657–658, 112 S.Ct. at 2693–2694, 120 L.Ed.2d at 532.

While the *Doggett* opinion controls our decision, I disagree with the majority's interpretation and application of *Doggett* to the facts of this case. Specifically, I do not agree that "Grant has made the threshold showing that the seventeen-month delay between indictment and service was presumptively prejudicial" so as to trigger the four-pronged inquiry under *Barker.* Although the *Doggett* court recognizes in a footnote that some cases have held a year to be a sufficient postaccusation delay to raise a presumption, it does so without approval or disapproval. See *id.,* 505 U.S. at 652, 112 S.Ct. at 2691, 120 L.Ed.2d at 528, fn. 1. I do not believe that *Doggett* is precedent for a one-year bright-line test.

The *Barker* court stated:

"Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." *Barker,* 407 U.S. at 530–531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117.

The circumstances in *Doggett* included a substantially greater delay than in this case—eight and one-half years compared to seventeen months. I cannot agree that seventeen months should be considered such an *extraordinary* delay that prejudice should be presumed without examination of other circumstances.

Under the particular circumstances of this case, a seventeen-month delay does *not* raise a presumption of prejudice. The evils that the Sixth Amendment was designed to protect against were discussed in *United States v. MacDonald* (1982), 456 U.S. 1, 8, 102 S.Ct. 1497, 1502, 71 L.Ed.2d 696, 704:

"The Sixth Amendment right to a speedy trial is thus not primarily intended to prevent prejudice to the defense caused by passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitations. The speedy trial guarantee is designed to minimize the possibility of lengthy

incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges."

In light of these protections, the fact that Grant was incarcerated on other unrelated matters for the entire period of delay militates against a presumption that he was prejudiced by the delay. In addition, while negligence for failure to promptly secure service of an indictment cannot be condoned, Grant's incarceration in Ohio prisons suggests the absence of any urgency in service of the indictment. I would hold that a seventeen-month delay in the service of an indictment under these circumstances does not implicate the Sixth Amendment's speedy trial clause.

Finally, I do not believe that Grant demonstrated sufficient particularized actual prejudice to justify the remedy of dismissal of the indictment against him. I cannot agree with the majority's conclusion that the loss of an opportunity to have an independent test so prejudiced Grant that "he was unable to meet the state's case." This court has previously held that the destruction of evidence by the state does not necessitate dismissal of the charges in the absence of bad faith on the part of the state. See *State v. Smith* (Mar. 16, 1994), Lorain App. No. 93CA005585, unreported at 6–8, 1994 WL 78610.

Based upon the foregoing, I would overrule Grant's first assignment of error. The decision of my colleagues to reverse the conviction renders it unnecessary to address the remaining assignments of error; however, in consideration of the speedy trial issue alone, I would affirm the conviction.