OPINION
Plaintiff-appellant, the state of Ohio, appeals the Clermont County Court of Common Pleas decision dismissing burglary and theft charges against defendant-appellee, William T. Craft. The state challenges the trial court's conclusion that the state was responsible for a four and one-half year delay in serving Craft with notice of his indictment.
On March 28, 1991, a Clermont County Grand Jury indicted Craft for burglary and theft. An attempt to serve Craft by mail was unsuccessful. On April 9, 1991, the Clermont County Court of Common Pleas issued a warrant for Craft's arrest. The Clermont County Sheriff's Department (the "Sheriff's Department") entered the warrant information into a law enforcement computer network that day. Authorities, however, could not locate Craft at his two last known addresses.[1] Between May 30, 1991, and December 8, 1995, the Sheriff's Department made no further attempt to locate Craft.
It appears that Hamilton County authorities had arrested Craft on December 18, 1990. Craft was subsequently convicted of aggravated burglary and receiving stolen property in Hamilton County. On March 18, 1991, ten days before the Clermont County Grand Jury indicted Craft, Craft entered the State Correctional Reception Center to serve two consecutive sentences. Craft is currently serving his Hamilton County sentences at the Chillicothe Correctional Institution.
On December 20, 1990, the Sheriff's Department had asked the Bureau of Criminal Investigations ("BCI") about Craft's criminal history. No information on the December 18, 1990, Hamilton County arrest was available then. The Sheriff's Department made no other attempt to locate Craft through the Law Enforcement Automated Data System ("LEADS").
In late 1995, Hamilton County authorities arrested Roy Thomas Hiles, Jr., apparently in the mistaken belief that he was Craft. This arrest led to the discovery that Craft was incarcerated. On December 8, 1995, a Clermont County Sheriff's Deputy served Craft with the 1991 Clermont County indictment. Craft was formally arraigned on the Clermont County charges on December 21, 1995.
Craft filed a motion to dismiss the indictment on speedy trial grounds. The trial court held evidentiary hearings on January 9 and July 1, 1996. On September 23, 1996, the trial court granted Craft's motion to dismiss. The trial court applied the four factor balancing test outlined in Barker v. Wingo (1972),407 U.S. 514, 92 S.Ct. 2182, and concluded that all four factors pointed toward a violation of Craft's constitutional right to a speedy trial.
On appeal, the state sets forth two issues for review under a single assignment of error. The state first argues that the conduct of the Sheriff's Department did not support the trial court's finding of governmental negligence. The state also argues that "an incarcerated felon who is ignorant of a pending unserved indictment cannot experience a disruption of life or infringement of liberty which alone can trigger a violation of the Speedy Trial Clause."
The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." The Sixth Amendment right to a speedy trial applies to state prosecutions by virtue of the Due Process Clause of the Fourteenth Amendment. Klopfer v. North Carolina (1967), 386 U.S. 213, 222-223, 87 S.Ct. 988, 993. Article I, Section 10 of the Ohio Constitution also guarantees an accused the right to a speedy trial.
The broad sweep of the Speedy Trial Clause is qualified by four different inquiries: the length of the delay, the reason for the delay, the defendant's assertion of his rights, and prejudice to the defendant. Barker, 407 U.S. at 530,92 S.Ct. at 2192. No single inquiry is a necessary or sufficient condition for finding unreasonable delay. Id. at 533, 92 S.Ct. at 2193. They are instead related factors that must be considered together with any other relevant circumstances. Id.
The state does not challenge the trial court's analysis as to the first and third factors cited in Barker. The third factor involves the defendant's assertion or waiver of the right to a speedy trial. The state came forward with no evidence that Craft was aware of the indictment, and the record contains no evidence to indicate that Craft acquiesced or consented to the delay. The first factor focuses on the length of the delay. Any delay must be "presumptively prejudicial" to trigger the Barker analysis. See Doggett v. U.S. (1992), 505 U.S. 647, 651, 112 S.Ct. 2686,2690. The trial court properly concluded that the forty-five month delay between the indictment and service of the indictment was more than sufficient to trigger the Barker analysis. After this initial inquiry, the length of the delay is balanced with the other factors identified in Barker; however, a presumption that pretrial delay is prejudicial increases over time. Id. at 654, 112 S.Ct. at 2691.
The state objects to the trial court's analysis of the second and fourth factors cited in Barker. The second factor involves the reason for the delay. Delays occur for many reasons, and a court must assign different weights in determining whether a given delay results in a speedy trial violation:
 A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.
Barker at 531, 92 S.Ct. at 2192.
There is no indication that the state acted in bad faith. At the very least, the Sheriff's Department tried to serve Craft at two different addresses. There is, however, also no evidence that authorities made any effort to locate Craft through contacts with friends, family, or acquaintances. More importantly, the state had ready access to Craft. Had the Sheriff's Department inquired with the BCI or searched LEADS at any time after January 10, 1991, it would have learned that Craft was incarcerated.[2]
The trial court found no reasonable explanation for the Sheriff Department's failure to do a records check when the warrant on the indictment was issued. This was especially unreasonable because over three months had elapsed since an earlier record check and Craft could not be located at his last known address. The trial court also found no reasonable explanation for the Sheriff Department's failure to perform any subsequent record checks for a period of almost four years. The state was apparently relying on some police agency to arrest Craft on the outstanding warrant. The trial court concluded, however, that the state should not have relied solely on inputing data; authorities should also have periodically accessed data to test its assumption that Craft was "at large."
The trial court's determination of negligence should be reviewed with considerable deference. Doggett, 505 U.S. at 652,112 S.Ct. at 2691. This court notes that the state was not required to initiate a multiple-county or statewide dragnet to find Craft. See State v. Packard (1988), 52 Ohio App.3d 99, 101. Craft, however, was readily available to state authorities for service of the warrant on indictment at all times during the period of delay. See State v. Grant (1995), 103 Ohio App.3d 28
(seventeen month delay between indictment and service of indictment while defendant was incarcerated on another charge violated speedy trial guarantees). See, also, Dickey v. Florida (1970), 398 U.S. 30, 36, 90 S.Ct. 1564, 1568. If the state had accessed readily available information when the indictment was issued or anytime thereafter, it would have located Craft. This court adopts the trial court's reasoning in this regard:
 The failure to [access readily available resources] may represent no more than the failure to implement procedures which would allow for a more prompt disposition of cases. Alternatively it may reflect the unfortunate fact that there are so many violent crimes committed within this county, that a single individual charged with burglary has relative unimportance. Whether these are the reasons, or whether there is still some other reason for not checking through LEADS periodically to check on Craft's whereabouts, the authorities were still negligent in this case, and this also points toward a speedy trial violation.
The final inquiry in determining whether the state denied Craft his right to a speedy trial is whether he was prejudiced by the delay. Affirmative proof of particularized prejudice is not essential to every speedy trial claim. Doggett at 655,112 S.Ct. at 2692; Moore v. Arizona (1973), 414 U.S. 25, 26, 94 S.Ct. 188,189; State v. Behymer (1992), 80 Ohio App.3d 791, 793. Excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or identify. Doggett at 654,112 S.Ct. at 2693. "While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other Barker criteria, it is part of the mix of relevant facts, and its importance increases with the length of the delay." Id. (citation omitted.)
Although Craft did not make a particularized showing of prejudice, the trial court identified several areas of potential prejudice. When the Clermont County Grand Jury issued its indictment, Craft had just received lengthy sentences in Hamilton County. The delay in notice certainly reduced or eliminated Craft's ability to negotiate with Clermont County authorities for a sentence to run concurrently with his Hamilton County sentences. Additionally, the trial court noted the possibility that the delay could affect Craft's parole eligibility. The trial court did not err in concluding that the delay here was prejudicial.
The trial court properly weighed the Barker criteria in dismissing the Clermont County indictment against Craft. The state's single assignment of error is overruled.
Judgment affirmed.
KOEHLER and POWELL, JJ., concur.
[1] The Sheriff's Department sent two teletypes to the Hamilton County Sheriff's Department with an address for Craft on Spindlehill Drive. On May 30, 1991, the Sheriff's Department sent another teletype to the Cincinnati Police Department directing the police to a different address for Craft.
[2] January 10, 1996, is the date BCI received information regarding Craft's December 18, 1995, arrest in Hamilton County.