DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant, Danny Merriweather, a.k.a. Abdullah Almurabitu, appeals from his convictions in the Lorain County Court of Common Pleas for aggravated arson and vandalism. We affirm.
The charges against Defendant arose from two criminal acts of property damage that occurred at the South Park apartment complex in Elyria in July of 1993. The South Park apartments had a reputation for being a high drug area. In an attempt to combat the drug use and dealing, a card-activated security gate was installed to limit access to the apartments. The police had also established a surveillance post in one of the apartments in Building K. From this apartment the police could observe most of the other buildings in the complex.
On July 16, 1993, the mechanism for operating the security gate was destroyed. A resident of one of the apartments saw Defendant "messing with" the gate controls and then fleeing from the scene of the crime. An indictment was issued on September 29, 1993, charging Defendant with vandalism, R.C. 2909.05(B)(1)(a).
Two weeks later, at approximately four or five o'clock in the morning on July 30, 1993, a Molotov cocktail[1] was thrown into the police surveillance apartment. The fire department was able to contain the blaze before it could spread to any of the other apartments in the twelve-unit building. Defendant and a co-conspirator, Shawn Shelton, were both charged with aggravated arson. Shawn, who was under eighteen at the time, pled guilty to a lesser arson charge in Juvenile Court based upon his role in offering Defendant crack cocaine to start the fire. Defendant was identified as the person who had made and thrown the firebomb into the apartment. He was indicted on July 11, 1995 for aggravated arson pursuant to R.C. 2909.02(A)(3).
Defendant waived his right to a jury trial. Both cases were consolidated and tried before the judge on January 21, 1997. The judge found Defendant guilty of both charges. He was sentenced to five to fifteen years in prison for the aggravated arson charge, and twelve months for the vandalism charge, both sentences to run concurrently. Defendant now appeals, raising eight assignments of error.
 ASSIGNMENT OF ERROR I
The Defendant was denied his constitutional right to a speedy trial.
In his first assignment of error, Defendant claims that he was denied his right to a speedy trial as afforded to him by theSixth Amendment of the United States Constitution and by R.C.2945.71, 2945.72, 2945.73, and 2941.401. Defendant contends that the three-year delay between the time of his indictment and his trial on the vandalism charge, and the one and one-half year delay on the arson charge were presumptively prejudicial. Defendant submits that the state negligently failed to make a good faith effort to serve the indictment within a reasonable time. He further maintains that the length of the delay hindered his ability to prepare his defense.
Defendant, however, fails to mention in his arguments that most of the time lapse was caused by the fact that he fled this jurisdiction, was arrested and incarcerated in Oklahoma, escaped, was recaptured, and had to be extradited to Ohio. Therefore, we find no violation of Defendant's constitutional or statutory rights to a speedy trial.
In reviewing a trial court's determination of whether a defendant's right to a speedy trial was violated, an appellate court applies the de novo standard to questions of law and the clearly erroneous standard to questions of fact. See UnitedStates v. Smith (C.A. 6, 1996), 94 F.3d 204, 208, certiorari denied (1997), ___ U.S. ___, 136 L.Ed.2d 877. See, also, United States v.Clark (C.A. 11, 1996), 83 F.3d 1350, 1352. Generally, "[f]or purposes of bringing an accused to trial, the statutory speedy trial provisions of R.C. 2945.71 et seq. and the constitutional guarantees found in the United States and Ohio Constitutions are coextensive." State v. O'Brien (1987), 34 Ohio St.3d 7, 9. SeeBarker v. Wingo (1972), 407 U.S. 514, 530, 33 L.Ed.2d 101, 116.
The constitutional guarantee of a speedy trial is not limited to only the period following formal arrest. See Doggett v.United States (1992), 505 U.S. 647, 648, 120 L.Ed.2d 520, 526. In determining whether a defendant's constitutional rights to a speedy trial have been violated, courts apply a two-pronged test. The first prong of the test triggers a speedy trial violation inquiry and involves a defendant showing that the delay experienced by the defendant was presumptively prejudicial.Doggett v. United States, 505 U.S. at 651-52, 120 L.Ed.2d at 528. See United States v. Smith (C.A. 6, 1996), 94 F.3d 204, 208-09.
Once the first prong is satisfied, the second prong entails balancing the following four factors:
(1) the length of the delay;
(2) the reason for the delay;
(3) whether the defendant asserted his right; and
(4) the prejudice to the defendant.
Barker v. Wingo, 407 U.S. at 530-32, 33 L.Ed.2d at 117-18; Statev. Grant (1995), 103 Ohio App.3d 28, 34; State v. Auterbridge
(Feb. 25, 1998), Lorain App. No. 97CA006702, unreported at 4-5.
The Ohio statute provides that "[a] person against whom a charge of felony is pending: * * * [s]hall be brought to trial within two hundred seventy days after his arrest." R.C.2945.71(C)(2). If a defendant remains in jail prior to his trial, the "three for one" provision of R.C. 2945.71(E) applies, requiring a trial within ninety days. However, the triple-count provision is applicable only where an accused is being held in jail solely on that pending criminal charge. State v. Brown
(1992), 64 Ohio St.3d 476, 479. See State v. Martin (1978),56 Ohio St.2d 207, 211.
The circumstances in this case do not demonstrate a violation of Defendant's rights to a speedy trial on any grounds. In August of 1993, Defendant had pled guilty to attempted robbery, theft and grand theft for two unrelated 1992 cases. He failed to appear for a presentence investigation report and sentencing, and a capias was issued for his arrest. He was eventually apprehended in Oklahoma where he was imprisoned, he escaped, and he was reimprisoned. The state was unable to serve Defendant with the vandalism and arson indictments until he was returned to Ohio in May of 1996. Even if we were to assume arguendo that the delay in serving the indictment was presumptively prejudicial, we find that Defendant's own willful actions in causing the delay by purposely fleeing from this jurisdiction preclude him from now claiming any harm. Moreover, Defendant's trial on January 21, 1997, was less than 270 days from the May 20th date when he was served with his indictments. The 270-day time limit to trial was applicable because Defendant was also incarcerated on other charges resulting from his conviction for the 1992 crimes. There was no violation of the time limits to a speedy trial.
Defendant's arguments are completely without merit. The first assignment of error is overruled.
 ASSIGNMENT OF ERROR II
The trial court improperly consolidated case numbers 93CR044199, Vandalism, and 95CR047484, Aggravated Arson.
Defendant alleges that the charges against him should have been tried separately because they constituted two unrelated offenses occurring on different dates. Defendant avers that he was prejudiced by the consolidation because testimony that would otherwise have been inadmissable was presented to the trial court.
It is well-settled that the law favors joinder. See Statev. Franklin (1991), 62 Ohio St.3d 118, 122. Under Crim.R. 13, two indictments may be tried together if the offenses could have been joined in a single indictment. Under Crim.R. 8, offenses "of the same or similar character, those "based on two or more acts or transactions connected together or constituting parts of a common scheme or plan," or those that "are part of a course of criminal conduct" may be joined. State v. Mills (1992), 62 Ohio St.3d 357,361. A defendant claiming prejudice by the joinder of offenses may move for severance under Crim.R. 14.
A defendant claiming error in the trial court's refusal to allow separate trials has the burden of affirmatively showing that his rights were prejudiced. State v. Torres (1981), 66 Ohio St.2d 340. The defendant must furnish the trial court with sufficient information to enable it to weigh the considerations favoring joinder against the defendant's right to a fair trial, and the defendant must demonstrate that the court abused its discretion in refusing to separate the charges for trial. Id.
In the case before us, both acts constituted the same type of offense, harm against property. Both crimes occurred in the same apartment complex within two weeks of each other. The motives for both cases were intermingled and involved attempts to thwart anti-drug measures that were being employed at the apartment complex. The prosecution stated that if the trials would have been severed, all but one of the witnesses who testified in the joint trial would have testified at the separate trials.
We do not find any abuse of discretion in the trial court's decision to allow joinder of the two offenses. Defendant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR III
[The trial judge] should have disqualified himself from presiding over the trial.
Defendant filed a pro se motion for disqualification of the trial judge with the common pleas court on the grounds that Defendant had filed a suit against the judge in federal court, and that he also had filed a formal complaint with the Ohio Supreme Court Disciplinary Counsel. Defendant claims that the fact that these allegations were made created a bias or the appearance of bias on the part of the judge.
Defendant, who voluntarily waived his right to a jury and thereby chose to have his cause determined by the judge in question, did not follow the procedures for seeking disqualification of a judge forth in R.C. 2701.03. The Chief Justice of the Supreme Court is bestowed with the authority to determine disqualification issues regarding judges of courts of common pleas, and a party seeking disqualification must file an affidavit with the Clerk of the Supreme Court. Section 5(C), Article IV, Ohio Constitution; R.C. 2701.03. A court of appeals has no authority to render a decision with regard to disqualification or to void a trial court's judgment on that basis. State v. Dougherty (1994), 99 Ohio App.3d 265, 268-69;State v. Ramos (1993), 88 Ohio App.3d 394, 398. Moreover, the mere existence of an adversarial relationship or the fact that the party filed a disciplinary complaint against the judge, is not necessarily sufficient grounds to disqualify a judge. See Statev. Blankenship (1996), 115 Ohio App.3d 512, 516; In reDisqualification of Ward (1995), 77 Ohio St.3d 1233, 1234.
For the above reasons, we overrule Defendant's third assignment of error.
 ASSIGNMENT OF ERROR IV
The state failed to comply with Rule 16 of the Criminal Rules of Procedure and the trial court improperly failed to sanction the state.
Next, Defendant complains that the state did not provide timely or complete responses to his requests for discovery and for a bill of particulars. We disagree.
The record shows that Defendant filed motions for discovery in July of 1996, and that the state responded and provided discovery information in October of 1996. Defendant complains that he was prejudiced because "[t]he discovery filed by the State was presented to the Defendant-Appellant more than three years after the date of the alleged offense and more than three years after the indictment was filed." We find this argument nonsensical. As noted above, the lengthy delay in this case was caused by the Defendant's out-of-state flight. It would be ludicrous to expect the state to be able to provide discovery to Defendant even before he was apprehended and was returned to this jurisdiction, and before he requested discovery.
Crim.R. 16 outlines the procedures and scope of discovery in criminal cases. The criminal rules do not delineate any specific time limit for the prosecution to respond to a discovery request.State v. Stamper (1995), 102 Ohio App.3d 431, 441. The rule grants the court considerable discretion in imposing sanctions where the court finds a violation of the discovery rules. Statev. Adkins (1992), 80 Ohio App.3d 211, 218.
The state provided the requested discovery to Defendant three months prior to trial. We do not find that Defendant was prejudiced by the timing of the state's response to his discovery request. Compare, e.g., State v. Smith (1986), 34 Ohio App.3d 180,188 (failure to provide a Defendant with any discovery until the day of trial would impede his ability to effectively present a credible defense). Defendant further complained that there were no addresses listed for certain witnesses. The state explained that those addresses were not known, and moreover, that those witnesses never testified. Of the witnesses who did testify, all of their names and addresses were provided except for one. Lisa Oliver was identified as a "Confidential Informant" on the initial discovery response, and her identity was not disclosed. However, prior to trial, the state did provide this information to Defendant and reviewed her proposed testimony with Defendant.
Although Defendant raised the issue of discovery problems at trial, Defendant did not request a continuance and did not provide the court with evidence of any actual prejudice other than a general claim of unfairness. We do not find any prejudice to the Defendant as a result of the discovery process, nor do we find that the trial court abused its discretion by not granting sanctions.
Defendant's fourth assignment of error is overruled.
 ASSIGNMENT OF ERROR V
The fire to the structure which is the subject of the indictment was not an occupied structure within the meaning of O.R.C. § 2909.02(A)(3).
The aggravated arson statute provides that "[n]o person, by means of fire or explosion, shall knowingly * * * [c]reate * * * a substantial risk of serious physical harm to any person or of physical harm to any occupied structure." R.C. 2909.02(A)(3). Defendant purports that the state failed to establish all of the elements of arson because the apartment was unfurnished and unoccupied at the time of the fire. This contention is completely baseless.
R.C. 2909.01(C)(1) defines "occupied structure" to include,inter alia, any building or structure which "is maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied and whether or not any person is actually present."
The individual apartment that was firebombed was a dwelling, even though the police who were using the apartment were not actually present at the time. It constituted an "occupied structure." Additionally, the entire twelve-unit apartment, taken as a whole, was fully occupied by other tenants who had to be evacuated. While it was fortunate that the police were temporarily away from the burned apartment, the fire created a substantial risk of serious physical harm to all of the other people that were in the building at that time.
Defendant's fifth assignment of error is overruled.
 ASSIGNMENT OF ERROR VI
The trial court improperly allowed hearsay testimony that was not covered by any exceptions to the hearsay rule.
Defendant challenges the admission of Lisa Oliver's testimony concerning the conversation in which Shawn Shelton offered Defendant crack cocaine if Defendant would firebomb the surveillance apartment. He alleges that the trial court erred in permitting this testimony under Evid.R. 801(D)(2)(e).
Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). A statement is not hearsay if the statement is offered against a party and is a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy. Evid.R. 801(D)(2)(e). See State v. Carter (1995), 72 Ohio St.3d 545, 550. An out-of-court declaration of a co-conspirator is admissible when the following five elements are established:
(1) the existence of a conspiracy;
 (2) the defendant's participation in the conspiracy;
(3) the declarant's participation in the conspiracy;
 (4) that the statement was made during the course of the conspiracy; and
 (5) that the statement was made in furtherance of the conspiracy.
State v. Daniels (1993), 92 Ohio App.3d 473, 482. "A conspiracy exists where two or more persons plan or agree to commit a crime, coupled with an overt act substantial enough to show an intention to carry the conspiracy through to completion." State v. Milo
(1982), 6 Ohio App.3d 19, 22. The conspiracy must be established by prima facie evidence State v. Thomas (1980), 61 Ohio St.2d 223,232. It is sufficient if such evidence "* * * fairly raises apresumption or an inference of conspiracy." State v. Martin
(1983), 9 Ohio App.3d 150, 152.
Prior to the testimony of Ms. Oliver, the state submitted the testimony of Detective Dussel establishing that Shawn Shelton was involved with Defendant in a conspiracy to commit the arson. Ms. Oliver further testified as to her eye-witness observation of Defendant siphoning the gasoline and making the Molotov cocktail. She was also present and observed Shawn Shelton give crack cocaine to Defendant right before, and shortly after, she saw Defendant light and throw the firebomb into the apartment. The statements made between the two co-conspirators were during the course of and in furtherance of the conspiracy.
We find that the trial court did not abuse its discretion in admitting testimony concerning statements made by Defendant's co-conspirator. Defendant's sixth assignment of error is sustained.
 ASSIGNMENT OF ERROR VII
The trial court improperly failed to conduct an in camera inspection of two key state's witnesses['] taped statements.
Crim.R. 16(B)(1)(g) provides for an in camera inspection of a witness' statement:
 Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any between the testimony of such witness and the prior statement.
The rule further provides that where the court finds inconsistencies, the defense attorney shall be given the statement for use in cross-examination; the statement will not be provided if the court determines that there are no inconsistencies. Id.
Two of the state's witnesses gave statements to the Elyria Police Department. Immediately after they testified, counsel for Defendant requested that the trial court conduct an in camera review of the statements. Both times, the trial court complied and reported that it found no inconsistencies. Both attorneys were present during the review. They thanked the trial court, and the trial resumed. Defendant now complains that the trial court reviewed only the witnesses' written statements for inconsistencies and not their taped statements.
When the trial court complied with Defendant's request, Defendant did not object in any way or inform the trial court that he desired any type of an additional review. An appellate court need not consider an alleged error where a party complaining of the trial court's actions failed to call the matter to the court's attention at a time when such an error could have been avoided or corrected. State v. Williams (1977), 51 Ohio St.2d 112, paragraph one of the syllabus.
First, we find that the record clearly demonstrates that the trial court appropriately and completely complied with Defendant's request for a Crim.R. 16(B)(1)(g) in camera review. Second, Defendant has waived any right to bring up additional concerns regarding this matter at this time because he did not raise them below in the trial court.
Defendant's seventh assignment of error is overruled.
 ASSIGNMENT OF ERROR VIII
Defendant's conviction was against the manifest weight of the evidence.
In his final assignment of error, Defendant asserts that the verdict was against the manifest weight of the evidence because the testimony of the state's two key witnesses was "uncorroborated, inconsistent, unreliable, and incredulous." We disagree.
The weight of the evidence concerns the inclination of the greater amount of credible evidence to support one side of the issue rather than the other. See State v. Thompkins (1997),78 Ohio St.3d 380, 387. The standard utilized is as follows:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
Id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175;State v. Otten (1986), 33 Ohio App.3d 339, 340. We may invoke this discretionary power to grant a new trial only in the exceptional case where the evidence presented weighs heavily against the conviction. See Martin, supra, at 175. See, also,State v. Thompkins, supra, at 387. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
Defendant questions the reliability of the first witness' identification of Defendant as the person who vandalized the security gate. Mr. Owens, who lived in a nearby apartment, testified that he looked out of his apartment window just before going to bed and clearly saw Defendant damaging the gate mechanism. Defendant attempted to discredit Mr. Owens' testimony because the witness could not describe Defendant's jacket or glasses. We do not find it unusual that the witness would not remember such details three years after the crime occurred. Mr. Owens made it very clear that he was certain that Defendant was the perpetrator of the crime. Mr. Owens recognized Defendant and immediately knew who it was when he first saw him. Mr. Owens had regularly seen Defendant around the complex and explained to the court that "everybody knew Abdullah." His testimony left no doubt that he recognized Defendant when he saw him that evening and was certain as to his identity.
Defendant also claims that Lisa Oliver's testimony was suspect and unreliable because of her record of felony convictions. Defendant had ample opportunity to impeach this witness at trial, but was not able to expose any motivation on her part that would cast doubt on her testimony. Defendant did not present any evidence to contradict the testimony of the state's witnesses.
The testimony of other witnesses also left no doubt as to Defendant's guilt. One of the investigating officers, Detective Dussel, testified concerning the co-defendant's involvement and conviction in the crime. He also offered testimony concerning Defendant's incriminating statements that were made when he was taken into custody:
 A. * * * I advised [Defendant] of the rumors we were hearing in the course of the investigation, that his name kept [coming] up as a person involved.
Q. What occurred then?
 A. He told me that he did not want to confess to me at that time, that he wanted to go out to the County Jail and think about it overnight.
* * *
 A. Then I asked him if the intention of the fire was that it was to get the police out of South Park, or if the people involved thought we were in there and it was an attempt on our lives, because I was concerned the place we were at had been fired on —
* * *
 Q. And then you stated that you framed it in the way that you were worried because you were one of the people that was going to be out there, did he mean to hurt, kill, what was his response to that?
 A. His response, the intent of the fire was not to kill anyone, just to get the police out of South Park.
After a thorough review of the record, we find that there was substantial, competent, and credible evidence to support the finding of the trial court, and that Defendant's conviction was not a miscarriage of justice. The eighth assignment of error is overruled.
The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this court, directing the County of Lorain Common Pleas Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
 Exceptions. _________________________________ LYNN C. SLABY, FOR THE COURT
BAIRD, J.
DICKINSON, J., CONCUR
[1] A Molotov cocktail is an incendiary device and is a common tool used to commit arson. It is a glass bottle with a wick in it, which is filled with either a combustible or flammable liquid. The wick is then lit, and the device can be thrown through a window.