This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, State of Ohio, timely appeals the decision of the Lorain County Court of Common Pleas granting defendant/appellee Lewis D. Thomas' Motion to Dismiss on grounds that he was denied a speedy trial. We reverse.
 I.
Lewis D. Thomas was a passenger riding in a car on Broad Street in Elyria on April 16, 1994. Elyria Police Patrolman Jim Sword stopped the car for reasons unknown. As Patrolman Sword approached the car, Thomas bolted. Sword chased Thomas down and found a quantity of crack cocaine on his person. Thomas was arrested, charged with aggravated trafficking in drugs, a second degree felony violation of R.C. 2925.03(A) (4), and with obstructing official business, violating R.C. 2921.31, a second degree misdemeanor. Two days later Thomas posted bond and on May 11, 1994, he waived his right to a preliminary hearing, without assistance of counsel. The case was bound over to the Grand Jury, which rendered an indictment on June 1, 1994. On June 8, Thomas failed to show up for the arraignment and a capias was issued. However, the capias was withdrawn that same day when it became clear that Thomas had never been served with notice of the arraignment.
At the time of the indictment, service was attempted at an address provided by Thomas. The sheriff's deputy was advised that Thomas no longer lived at the address. The sheriff's department called Thomas's bail bonding company to find out if they had a better address. The bonding company did not have any further information and had no way to contact Thomas because he was not represented by counsel. Thomas was not served with the indictment until February 20, 1997.
At the hearing on Thomas' motion to dismiss, held on January 27, 1998, the following testimony was presented. Patrolman Sword stated that he listed Thomas' address on the complaint as 610 Wayne Street, Elyria. Sword said the only way he would have that address is if Thomas provided that address at the time of the initial arrest. The April 1994 arraignment transcript, however, listed Thomas' address as 342 South Maple Street, Elyria and that was where service was attempted on June 2, 1994. Thomas testified that he gave Sword the 342 South Maple Street address at the time of his initial arrest, and he insists he did not give the Wayne Street address. Thomas also testified that from 1993 to 1998, he resided alternately with his mother and his girlfriend. His mother resided at 342 South Maple until sometime in the summer of 1994, when she moved to 610 Wayne Street. His girlfriend has resided continuously at 535 S. Abbe Road, Apt. D-11. Thomas testified that he lived at all times at one of the three residences, South Maple Street, Abbe Road or Wayne Street, from the time of the original arrest to the time of his actual service of the indictment in 1997. Thomas stated that he did not give the patrolman the Abbe Road or the Wayne Street address. He also testified that he has never had a driver's license, and he did not have a state ID until some time in 1995. Thomas testified that after thirty days had passed with no service of the indictment, he simply assumed that the charges had been dropped. Finally, Patrolman Sword testified that he arrested Thomas on other charges in December 1995. Sword remembered the earlier arrest, and asked Thomas what had happened with the other charges, but Thomas made no comment. Sword did not pursue the matter further.
When Thomas was located and served with the June 1994 indictment in February 1997, he was represented by counsel. Between the time of the service of indictment and the filing of the motion to dismiss eleven months later, four dates were set for trial, with continuances. For each continuance, Thomas waived his right to a speedy trial for the period of the continuance. Just days before trial was scheduled to begin, Thomas filed the motion to dismiss on the basis of his right to a speedy trial, guaranteed by R.C. 2945.71(C), Section 10, Article I of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution. A hearing was held on January 27, 1998 and the trial judge dismissed the charges because of the lengthy delay between indictment and trial. The State of Ohio now appeals, stating that the trial court erred in its application of the law to the question of whether Thomas' right to a speedy trial was violated.
 II.
In reviewing whether a defendant was denied his right to a speedy trial, a court must review questions of law de novo. Statev. Gregrich (March 24, 1999), Wayne App. No. 98CA0029, unreported at 2-3. The reviewing court must apply the clearly erroneous standard to questions of fact. State v. Auterbridge (Feb. 25, 1998), Lorain App. No. 97CA006702, unreported at 3. See, also,United States v. Smith (C.A.6, 1996), 94 F.3d 204, 208, certiorari denied (1997), 519 U.S. 1133, 136 L.Ed.2d 877.
The Sixth and Fourteenth Amendments to the United States Constitution, and Section 10, Article I of the Ohio Constitution guarantee a criminal defendant the right to a speedy public trial.State v. Ladd (1978), 56 Ohio St.2d 197, 200, certiorari denied (1979), 441 U.S. 926, 60 L.Ed. 400. The Ohio Legislature enacted R.C. 2945.71 to ensure that these constitutional safeguards are properly protected. Thus, the language of R.C. 2945.71 must be strictly construed against the State. State v. Pachay (1980),64 Ohio St.2d 218, syllabus. As such, speedy trial time begins to run the day after the date of arrest, or service of summons.State v. Steiner (1991), 71 Ohio App.3d 249, 250-51. However, the delay between indictment and arrest can also violate a defendant's Sixth Amendment speedy trial rights. Doggett v.United States (1992), 505 U.S. 647, 648, 120 L.Ed.2d 520, 526.
The United States Supreme Court in Doggett outlined the process for determining if an accused was denied a speedy trial. First, the accused must make a preliminary showing of a "presumptively prejudicial" delay. Id. at 652,120 L.Ed.2d at 528. The Court in Doggett observed, without approval or criticism, that a survey of cases indicates that a delay approaching one year is generally considered enough to meet this first showing. Id. at 652, fn. 1, 120 L.Ed.2 528, fn.1. Once that showing is made, the second level of inquiry is triggered. As set forth in Barker v. Wingo (1972), 407 U.S. 514,33 L.Ed.2d 101, this inquiry weighs four factors to determine whether the delay between indictment and arrest violated the right of the accused to a speedy trial. Id. at 530-533, 33 L.Ed.2d 116-118. See State v. Selvage (1997), 80 Ohio St.3d 465, 467; State v.Triplett (1997), 78 Ohio St.3d 566, 569.
 Assuming, without deciding, that the trial court in Thomas' case correctly found that the delay of thirty-three months triggered the Barker
inquiry, we disagree with the trial court's conclusion that Thomas was denied a reasonably speedy trial, in light of the Barker factors.
 The first Barker factor is the length of the delay. In the instant case, the delay between indictment and service of the indictment was thirty-three months. The Ohio Supreme Court has found a delay of fifty-four months was a permissible delay where the accused was not incarcerated and did not even know of the charges. State v. Triplett, 78 Ohio St.3d at 569. Here, Thomas knew that charges had been filed but he assumed that they had been dropped when he was not served with the indictment within thirty days. Thomas was not incarcerated in the interim. We disagree with the trial court that this factor weighs heavily in favor of Thomas. Rather we find that this factor weighs only slightly in favor of Thomas.
 The second factor is the reason the government offers to justify the delay. If the accused caused or contributed to the delay, this factor would weigh against him. If the government's negligence caused the delay, this factor would weigh somewhat in the defendant's favor. State v. Alston
(Oct. 29, 1997), Lorain App. No. 97CA006727, unreported, at 6, citing State v. Grant (1995), 103 Ohio App.3d 28, 35. If the government deliberately delayed, hoping to impinge on the defendant's ability to mount a defense, it would weigh heavily in the defendant's favor. Id. At the hearing on his motion to dismiss, Thomas stated that he only gave the arresting officer the 342 South Maple Street address, although at the time of the initial arrest, the officer somehow had the 610 Wayne Street address. The State apparently never tried to serve Thomas at the 610 Wayne Street address, although they had it from the beginning. In addition, when the arresting officer again arrested Thomas eighteen months later, he did not follow up to see if the April 1994 charges were resolved. The State was negligent in its efforts to serve Thomas. However, Thomas admitted that he never gave police his girlfriend's address, where he regularly resided. Given Thomas' shifting addresses, his less than forthright information to the police contributed to the State's delay in serving him with the indictment.[1]
This factor weighs equally in favor of Thomas and the State.
The third factor is "the timeliness of a defendant's invocation of the speedy trial right." State v. Triplett, 78 Ohio St. 3
d at 570. In Barker, supra, the United States Supreme Court reiterated that a defendant has no duty to bring himself to trial. It is the burden of the state to ensure that a defendant is afforded a speedy trial. Barker, supra, 407 U.S. at 527,33 L.Ed.2d at 115. However, the Court went on to say that a defendant's assertion of, or failure to assert, the speedy trial right is a factor to consider in determining whether that right was denied. Id., at 528, 33 L.Ed.2d at 116. In the instant case, the trial court found that Thomas had asserted his right, but it failed to note when, if at all, he asserted this right prior to his filing of the motion to dismiss. When Thomas was first served with the indictment in February 1997, he could have asserted that his right to a speedy trial had been denied. He did not do so for nearly one year. During that year Thomas both asked for and agreed to more than ten continuances, each time waiving his statutory right to a speedy trial under R.C. 2945.71 et. seq.
(guaranteeing for felony cases that trial will commence within two hundred seventy days after arrest). In other words, during the year from his service of the indictment to the trial date, Thomas was repeatedly faced with the issue of his right to a speedy trial. Yet he waited until the eleventh hour to assert that his speedy trial right was denied due to the long delay from indictment to service. Unlike the trial court, we find this factor weighs in favor of the State.
The final factor is prejudice to the defendant. Prejudice to the defendant can take three forms: lengthy incarceration, anxiety over unresolved criminal charges, and impediments to an effective defense. Barker v. Wingo, 407 U.S. at 532, 33 L.Ed.2d at 118. As addressed above, Thomas did not experience the first two forms of prejudice. Although he knew there were charges outstanding, he assumed after a month that the charges had been dropped. The sole remaining possible prejudice would be that the fading memories of witnesses or loss of evidence would prevent Thomas from mounting a proper defense.
In his motion to dismiss, Thomas merely states that the person driving the car in question on April 16, 1994 "may no longer be available," or, if located, may have a faulty memory due to the lapse of time. The State points out that the single witness[2] at the time of Thomas' arrest, the driver of the automobile, was not actually present when Thomas was arrested. Thus, it is very unlikely that any testimony he might have to offer would help or hurt Thomas' defense.
The Supreme Court in Doggett said that "an affirmative proof of particularized prejudice is not essential to every speedy trial claim." Doggett, 505 U.S. at 655, 120 L.Ed.2d at 530, citingMoore v. Arizona (1973), 414 U.S. 25, 26-27, 38 L.Ed.2d 183,185-186, fn. 2. However, presumed prejudice based on groundless speculation will not be enough to carry the day for the defendant.State v. Triplett, 78 Ohio St.3d at 570. Thomas has shown no actual prejudice but merely speculates that the one person around at the time of his initial arrest, who saw nothing of the arrest itself, may no longer be available or may not have a fresh memory of events. Since this individual's testimony likely would have little bearing on the outcome of Thomas' trial, we conclude that this factor weighs in favor of the State.
 Thomas experienced a long delay from indictment to trial. That delay can be attributed in part to Thomas' misleading information about his address at the time of his initial arrest. The delay will result in little, if any, actual prejudice to him. Consequently, this Court finds the State's assignment of error well taken. We reverse the judgment of the trial court and remand for proceedings consistent with this decision.
Judgment reversed and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Lorain County Court of Common Pleas to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellee.
Exceptions.
 ___________________________ WILLIAM R. BAIRD
 FOR THE COURT
SLABY, J.
WHITMORE, J.
CONCUR
[1] Curiously, in his brief in support of his Motion to Dismiss, Thomas says that the police could have, and should have, just checked his driver's license to find his address. However, at the hearing on the motion to dismiss, Thomas testified that he has never had a driver's license, and he only got a state I.D. in 1995. Even if he had had a driver's license at the time of his indictment, this may have been of little help to the police. From 1993 to 1998, Thomas had three residences, but only one of them would have appeared on a driver's license. This most likely would have been the 342 South Maple Street address where his mother lived prior to the date of the offense. This is the address at which service was attempted.
[2] In his brief in support of the Motion to Dismiss, Thomas refers to "witnesses" although he only speaks with specificity of the single witness, the driver of the car.