This is an appeal from an Athens County Common Pleas Court judgment finding William R. Flickinger, defendant below and appellant herein, guilty of aggravated trafficking in drugs in violation of R.C. 2925.03(A)(1).
Appellant raises the following assignments of error for review:
FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN NOT GRANTING APPELLANT'S MOTION TO DISMISS, VIOLATING APPELLANT'S DUE PROCESS RIGHTS AGAINST EXCESSIVE PREINDICTMENT DELAY IN COMMENCING PROSECUTION."
SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO DISMISS, VIOLATING APPELLANT'S CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL DUE TO POST-INDICTMENT DELAY IN PROSECUTION."
Our review of the record reveals the following pertinent facts. On January 31, 1996, the Athens County Grand Jury returned an indictment charging appellant with aggravated trafficking in drugs in violation of R.C. 2925.03(A)(5). On January 31, 1996, the court issued a warrant for appellant's arrest that listed a Louisa Avenue address for appellant's place of residence. On May 30, 1997, Athens County Sheriff's Deputy Brian Cooper arrested appellant for DUI. Later the same day, appellant also was arrested on the indictment. On June 4, 1997, appellant was arraigned.
On June 20, 1997, appellant filed a motion to dismiss the indictment asserting that the state violated appellant's right to a speedy trial. In support of the motion, appellant argued that an unreasonable delay occurred between the alleged commission of the offense and the date of the indictment. Appellant noted that the alleged offense occurred on November 8, 1994, yet the state did not return an indictment charging appellant with the offense until January 31, 1996. Appellant asserted that the state's delay in prosecution resulted solely from the state's desire to gain a tactical advantage. Additionally, appellant contended that he suffered actual prejudice as a result of the delay. Appellant argued that he suffered actual prejudice because he did not have an opportunity to gather witnesses to the alleged crime.
The state argued that no speedy trial violation occurred. The state asserted that the reason for the delay was not, as appellant contended, to gain a tactical advantage. Rather, the state maintained that the delay in prosecution resulted from the state's desire to continue the investigation in order to determine whether appellant would eventually reveal his narcotics supplier. Furthermore, the state argued that appellant failed to demonstrate that he suffered actual prejudice as a result of the delay in prosecution.
On July 16, 1997, and on July 29, 1997, the trial court held a hearing regarding appellant's motion to dismiss the indictment. At the hearing, the following testimony and evidence was presented.
Agent John Dozer, an undercover officer with the Bureau of Criminal Identification and Investigation (BCI), testified that on November 8, 1994, he was in Smiling Skull Saloon in Athens with a confidential informant. The confidential informant had agreed to introduce Dozer to persons suspected of selling illegal drugs. The confidential informant introduced Dozer to appellant. For approximately ten to fifteen minutes, Dozer spoke with appellant about purchasing 100 unit doses of LSD. Appellant then left the bar. Shortly thereafter, appellant returned to the bar and sold Dozer ten unit doses of LSD for $4.00 per unit. Dozer and appellant then discussed whether appellant would sell Dozer larger quantities of LSD at a reduced cost per unit dose. Four or five minutes later, Dozer and the informant left the bar. Dozer did not arrest appellant because Dozer wanted to purchase additional drugs from appellant at a later time, and because Dozer hoped that appellant eventually would reveal his narcotics source.
On November 18, 1994, Agent Dozer broke both of his wrists. Dozer could not return to his normal work duties until February 15, 1995. Dozer testified that after his return to work, he could not locate appellant because the confidential informant experienced health problems. Dozer and his partner attempted to locate appellant but were unsuccessful.
In late spring or early summer of 1995, Agent Dozer requested former Southeastern Counties of Ohio Drug Task Force Commander Olen Martin's assistance in locating appellant. Deputy Alan Flickinger, appellant's older half-brother, gave Dozer and Martin an address for appellant on Tucker Run Road. Dozer and Martin could not, however, locate appellant at the Tucker Run Road address or at any other places at which they thought appellant might be present.
On August 18, 1995, Agent Dozer turned his file over to Commander Martin and ceased his involvement in the case. Martin and other law enforcement officers then attempted to locate appellant. Martin could not establish that appellant lived on Tucker Run Road. Martin had received information that appellant was staying at various locations.
Appellant testified that he had been living at the Tucker Run Road address since 1993. Appellant further testified that in December of 1995, when Commander Martin and other officers came to his residence, he was at the Tucker Run Road address.
In December of 1995, Commander Martin asked appellant to sell drugs for law enforcement officers in an undercover capacity. Appellant refused to sell drugs or to cooperate with the officers. After appellant's refusal to cooperate with law enforcement officers, Martin referred the case to the Athens County Prosecutor's Officer for presentation to the grand jury. Martin testified that once an indictment is filed, the summons is sent to the Athens County Sheriff's office. Martin believes that the Louisa Avenue address contained on the arrest warrant was obtained from LEADS.
Commander Martin testified that he possesses appellant's Tucker Run Road address and appellant's telephone number. Martin could not recall, however, whether he provided the information to the prosecuting attorney's office.
Appellant testified that he did not know the name of the bartender or any bar patrons present at the Smiling Skull Saloon on November 8, 1994. Furthermore, appellant stated that he could not recall whether he was present at the bar on November 8, 1994 and that he could not recall his activities during the days preceding and following November 8, 1994.
On August 18, 1997, the trial court overruled appellant's motion to dismiss the indictment. The trial court found that appellant failed to establish that the pre-indictment delay violated appellant's due process rights. The trial court noted that appellant failed to demonstrate that he suffered actual prejudice. The trial court stated that appellant's claims of memory loss and of loss of evidence failed to establish actual prejudice. The trial court further found that the state's delay in prosecution was justifiable. The trial court noted that the delay resulted from Agent Dozer's desire to purchase additional drugs from appellant and to persuade appellant into cooperating with law enforcement officers. The trial court found that Dozer's injuries and the confidential informant's health status further delayed the investigation.
Additionally, the trial court concluded that appellant failed to establish that the post-indictment delay violated his speedy trial rights. The trial court found that the delay occurred as a result of the incorrect address contained on the arrest warrant.
On September 19, 1997, the trial court, upon the state's motion, amended the indictment to charge appellant with aggravated trafficking in drugs in violation of R.C.2925.03(A)(1), a third degree felony. Appellant subsequently entered a no contest plea to the amended indictment. On January 26, 1998, the trial court sentenced appellant.
Appellant filed a timely notice of appeal.
 I
In his first assignment of error, appellant asserts that the trial court erred by overruling his motion to dismiss the indictment. Appellant contends that the fifteen month delay in commencing prosecution violated his due process rights. Appellant claims that the delay prejudiced his ability to adequately prepare a defense because his memory as to the events surrounding the alleged offense has faded, and because he could not remember any witnesses present at the scene of the alleged offense.
Furthermore, appellant asserts that the state's reason for the delay is unjustifiable. Appellant argues that the state delayed seeking an indictment to gain a tactical advantage. Appellant notes that Agent Dozer testified that he did not immediately arrest appellant when the offense occurred because law enforcement officers hoped to learn appellant's drug supplier's name.
Initially, we note that when reviewing a trial court's decision regarding a motion to dismiss an indictment based upon pre-indictment delay, a reviewing court must accord due deference to the trial court's findings of fact. The reviewing court may, however, freely review the trial court's application of the law to the facts. See, e.g., State v. Kuhn (June 10, 1998), Ross App. No. 97 CA 2307, unreported; State v. Boso
(Sept. 11, 1996), Washington App. No. 95 CA 10, unreported.
A delay in commencing prosecution may violate a defendant's due process rights.[1] See United States v. Lovasco (1977),431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752; United States v.Marion (1971), 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468;State v. Luck (1984), 15 Ohio St.3d 150, 153-54,472 N.E.2d 1097, 1102. To establish that a delay in bringing prosecution has violated a defendant's due process rights, the defendant first must establish that the delay has caused him actual prejudice. Second, the defendant must demonstrate that the actual prejudice suffered outweighs any legitimate governmental grounds for the delay in bringing prosecution. See Lovasco,431 U.S. at 789-90, 97 S.Ct. at 2049, 52 L.Ed.2d at 752; Marion,404 U.S. at 324, 92 S.Ct. at 465, 30 L.Ed.2d 468; Luck, 15 Ohio St. 3
d at 154, 472 N.E.2d at 1102. Furthermore, any claim of prejudice, such as the death of a key witness, lost evidence, or faded memories, must be balanced against the other evidence in the case in order to determine whether the defendant will suffer actual prejudice at trial. Luck, supra.
When a defendant asserts that a pre-indictment delay violated his due process rights, prejudice may not be presumed. SeeUnited States v. Crouch (C.A. 5, 1996), 84 F.3d 1497, 1514-15
(stating that a defendant must establish actual prejudice, not presumptive prejudice, to entitle him to a dismissal based upon pre-indictment delay). As the court stated in State v. Collins
(1997), 118 Ohio App.3d 73, 77, 691 N.E.2d 1009, 1111:
 "The notion that prejudice may be presumed from a lengthy delay arises in the context of the four part balancing test that courts use in determining whether post-indictment delay has deprived a defendant of his or her Sixth Amendment right to a speedy trial. Doggett v. United States (1992), 505 U.S. 647, 120 L.Ed.2d 520, 112 S.Ct. 2686; Barker v. Wingo (1972), 407 U.S. 514, 33 L.Ed.2d 101, 92 S.Ct. 2182. The Barker four-part test, and the notion of presumptive prejudice, applies only to post-indictment delays which implicate the Sixth Amendment right to a speedy trial, and has no application to pre-indictment delays."
If the court determines that the defendant will suffer actual prejudice at trial as a result of the delay in commencing prosecution, the court then must determine whether the reason for that delay is unjustifiable. A delay may be unjustifiable when, for example, the state intentionally delays indicting the defendant in order to gain some tactical advantage over the defendant, see, e.g., Lovasco, 431 U.S. at 789-90,97 S.Ct. at 2048-49, 52 L.Ed.2d 752; Marion, 404 U.S. at 324;92 S.Ct. at 465, 30 L.Ed.2d 468; Crouch, 84 F.3d at 1500; United States v.Mmahat (C.A. 5, 1997) 106 F.3d 89, 94; United States v.Scoggins (C.A. 8, 1993), 992 F.2d 164, 167; United States v.Mills (D.C.C. 1991), 925 F.2d 455, 464; United States v. Benson
(C.A. 11, 1988), 846 F.2d 1338, 1341, or when through the state's own negligence, the state ceases investigation of a case and then later decides to commence prosecution upon the same evidence that was available to it at the time the investigation ceased. Luck, supra.
In Luck, the defendant was indicted in 1993 for a murder that occurred in 1967. The defendant moved to dismiss the indictment based upon a due process violation. The defendant argued that the fifteen-year delay between the commission of the offense and the indictment prejudiced her ability to present a defense. The defendant claimed that: (1) two key witnesses had died; (2) a witness who identified the defendant in 1967 claimed that his memory had faded and he could no longer identify the defendant; and (3) all of the tape recorded interviews with possible witnesses and suspects had been destroyed and no transcripts existed.
The Ohio Supreme Court agreed with the trial court's conclusion that the loss of two key witness, the faded memories, and the lost evidence prejudiced the defendant's ability to defend the charge. The court noted that one of the witnesses who had died had been in the presence of the defendant and the victim at the time of the murder. The court stated that the defendant was "obviously prejudiced by not being able to seek verification of her story from [the witness] and thereby establishing mitigating factors or a defense to the charge against her." Luck, 15 Ohio St.3d at 158,472 N.E.2d at 1105. The court further concluded that the state's reason for the fifteen-year delay was unjustifiable. The court noted that the state sought the indictment based upon the exact same evidence that had been available to it fifteen years earlier and offered no other justification, other than a "police error in judgment," for the delay.
In the case at bar, approximately fifteen months passed between the time that the offense occurred and the time that the state sought an indictment. Appellant asserts that the delay caused him actual prejudice because he could not remember the events of November 8, 1994. We do not believe, however, that a general assertion that the defendant cannot remember the events of the alleged crime demonstrates actual prejudice. As the court stated in State v. Glasper (Feb. 2, 1997), Montgomery App. No. 15740, unreported:
 "The defendant will not satisfy his or her burden of proof by merely generally alleging the possible prejudice inherent in any delay, for example, that memories have faded, witnesses may be inaccessible, and evidence may be lost. The defendant must identify the specific prejudice suffered, and that prejudice must be substantial, for instance, that important taped witness interviews were destroyed or that key witnesses have died."
We note that the federal courts of appeal appear to agree that a defendant must provide concrete proof that he will suffer actual prejudice at trial as a result of the government's delay in indicting the defendant. See, e.g., Crouch, 84 F.3d at 1515
(stating that vague assertions of faded memories are insufficient to establish actual prejudice; the defendant must state which witness is unable to fully recount the details of the crime and how the witness' lapsed memory will prejudice the defense); United States v. Beszborn (C.A. 5, 1994) 21 F.3d 62,67, certiorari denied sub nom, Westmoreland v.United States, 513 U.S. 934, 115 S.Ct. 330, 130 L.Ed.2d 288
(stating that vague assertions of faded memories are insufficient to establish actual prejudice); United States v.Stierwalt (C.A. 8, 1994), 16 F.3d 282, 285 (stating that assertions of faded memories are insufficient to establish actual prejudice when the defendant fails to specify how witness' lapsed memory will harm his defense); United States v.Harrison (S.D.N.Y. 1991), 764 F. Supp. 29, 32 (stating that assertion of faded memories is insufficient to establish actual prejudice); United States v. Greer (D. Vt. 1997),956 F. Supp. 525, 528 (stating that a defendant must present concrete proof of actual prejudice and not mere speculation of actual prejudice).
In the case sub judice, we believe that appellant's assertion that witnesses' memories have faded is much too speculative and fails to rise to the level of concrete proof. Other than speculating that if he could remember who was at the bar on the evening of the offense, he would have been able to challenge whether he committed the offense, appellant has not stated how his memory lapse would prejudice his defense. See State v.Gotham (Dec. 31, 1997), Trumbull App. No. 96-T-5485; State v.Powell (May 5, 1997) Montgomery App. No. 16013.
Moreover, we note that when the offense is aggravated trafficking in drugs, as was charged in the indictment in the case sub judice, the statute of limitations is six years. R.C.2901.13. As other courts have noted, any period of delay in commencing prosecution that falls within the statute of limitations is not prejudicial in the absence of specific evidence to the contrary. See Lovasco, 431 U.S. at 789,97 S.Ct. at 2048, 52 L.Ed.2d 752; Marion, 404 U.S. at 322,92 S.Ct. at 464, 30 L.Ed.2d 468; Stierwalt, supra (stating that the statute of limitations protects a defendant's right to a prompt indictment); Collins, 118 Ohio App.3d at 77,691 N.E.2d at 1111; State v. Packard (1988), 52 Ohio App.3d 99,102, 557 N.E.2d 808, 812;. As the court stated in Glasper,supra:
 "Pre-indictment delays * * * cannot be presumptively prejudicial if they are brought within the applicable statute of limitations because statutes of limitations guarantee against a prosecutor bringing overly stale charges. State v. Lanier (January 31, 1997), Montgomery App. No. 15728, unreported; State v. Bailey (February 7, 1997), Montgomery App. No. 15669, unreported. Instead, it is, in a sense, presumed that if an indictment is brought within the period defined by the statute of limitations, the defendant has suffered no prejudice. The statute of limitations only guard against possible prejudice, however. Thus, a defendant may overcome this presumption by demonstrating actual prejudice."
We find, therefore, that appellant has failed to establish that the fifteen-month delay in bringing the indictment caused appellant actual prejudice.
Assuming, arguendo, that appellant had established the existence of actual prejudice, we believe that the state presented justifiable reasons for the delay that outweigh any prejudice appellant may have suffered. Agent Dozer testified that he did not immediately arrest appellant. Rather, Dozer referred the case to the prosecutor because law enforcement officers hoped to gain appellant's assistance in catching other drug traffickers and to learn who was appellant's drug supplier. When appellant refused to cooperate with law enforcement officers, the state indicted appellant approximately one month later. Furthermore, Dozer testified that his injury, as well as the confidential informant's illness, played a role in delaying the investigation. Consequently, we agree with the trial court's conclusion that appellant has suffered no violation of his due process rights as a result of the fifteen-month delay between the date the offense occurred and the date of the indictment.
Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.
 II
In his second assignment of error, appellant argues that the trial court erred by overruling his motion to dismiss the indictment due to a violation of appellant's constitutional right to a speedy trial. Specifically, appellant asserts that the trial court should have dismissed the indictment due to the delay between the date of the indictment, January 31, 1996, and the date of appellant's arrest, May 30, 1997. We disagree with appellant.
The Sixth Amendment guarantees an accused in a criminal prosecution "[t]he right to a speedy * * * trial." While "the Speedy Trial Clause is written with such breadth that, taken literally, it would forbid the government to delay the trial of an 'accused' for any reason at all," Doggett, 505 U.S. at 651,112 S.Ct. at 2690, 120 L.Ed.2d 520, the United States Supreme Court
 "[has] qualified the literal sweep of the provision by specifically recognizing the relevance of four separate inquiries: whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result."
Id. None of the individual factors is determinative of whether the defendant suffered a violation of his constitutional right to a speedy trial. Rather, the court must consider the four factors collectively. Barker, 407 U.S. at 533,92 S.Ct. at 2193, 33 L.Ed.2d 101.
The Doggett Court noted that "[s]imply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." Id.,505 U.S. at 651-52, 112 S.Ct. At 2691, 120 L.Ed.2d 520 (quoting Barker,407 U.S. at 530, 92 S.Ct. At 2192, 33 L.Ed.2d 101). The Court further noted that as the delay approaches one year, the delay becomes presumptively prejudicial. Id., 505 U.S. at 651-52,112 S.Ct. at 2691, 120 L.Ed.2d 520.
In conducting our analysis of appellant's speedy trial claim, we note that the constitutional right to a speedy trial " 'is * * * not primarily intended to prevent prejudice to the defense caused by passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitations.' " State v. Triplett (1997), 78 Ohio St.3d 566,868, 679 N.E.2d 290, 292 (quoting United States v. MacDonald
(1982), 456 U.S. 1, 8, 102 S.Ct. 1497, 1502, 71 L.Ed.2d 696,704). Rather,
 " '[t]he speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trail, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.'"
Id., 78 Ohio St.3d at 568, 679 N.E.2d at 292 (quotingMacDonald, 456 U.S. at 8, 102 S.Ct. at 1502, 71 L.Ed.2d 696).
In Doggett, the court found that the eight-and-one-half-year delay between the accused's indictment and arrest violated hisSixth Amendment rights. In Doggett, the defendant was secretly indicted on federal drug charges. The defendant left the country before law enforcement officials could serve him with the indictment and arrest him. Two and one-half years after leaving the country, the defendant returned to the United States where he lived openly under his own name, married, earned a college degree, and found a steady job. In 1988, law enforcement officers located the defendant during a simple credit check on individuals with outstanding warrants. No evidence existed that the defendant ever knew of the charges against him until his arrest.
The Supreme Court gave special attention to the fourth factor of the Barker test, prejudice to the defendant. The Court noted that although the defendant could not demonstrate any specific prejudice he suffered as a result of the eight-and-one — half-year delay, the Court nonetheless found the delay presumptively prejudicial. Id., 505 U.S. at 655,112 S.Ct. at 2693, 120 L.Ed.2d 520. Weighing the fourth factor with the remaining Barker factors, the court concluded that the delay violated the defendant's Sixth Amendment rights.
In Triplett, the defendant was arrested in 1993 on an indictment that had been returned in 1989. The Ohio Supreme Court nonetheless found that the fifty-four month delay did not violate the defendant's constitutional right to a speedy trial. The court noted that the defendant was ignorant of the charges until her arrest and, thus, the delay did not infringe upon the defendant's liberty. Thus, while the court noted that the first factor weighed in the defendant's favor, the court found its impact negligible because the interest the Sixth Amendment was designed to protect, freedom from excessive pretrial incarceration, was not implicated.
With respect to the second Barker factor, the court noted that the defendant precipitated the delay by refusing to accept certified mail at the address she had previously given to the police.
The third factor, the court concluded, weighed only moderately in the defendant's favor. The court reasoned that the defendant, once arrested pursuant to the indictment, did not raise the speedy trial issue until "the eleventh hour."Triplett, 78 Ohio St.3d at 570, 679 N.E.2d at 294.
The court concluded that the fourth factor, the prejudice to the defendant, weighed against the defendant. While the court recognized the Doggett Court's statement that " 'time's erosion of exculpatory evidence and testimony "can rarely be shown," ' " the Triplett court further recognized that "presumptive prejudice cannot alone carry a Sixth Amendment claim."Triplett, 78 Ohio St.3d at 570, 679 N.E.2d at 294 (quotingDoggett, 505 U.S. at 655, 112 S.Ct. at 2692, 120 L.E.2d 520
(internal quotation omitted)). Rather, the Triplett court noted that the presumptive prejudice that arises from the passage of time " 'is part of the mix of relevant facts, and its importance increases with the length of delay.' " Triplett,78 Ohio St. 3d at 570, 679 N.E.2d at 294 (quoting Doggett,505 U.S. at 656, 112 S.Ct. at 2693, 120 L.E.2d 520),
In evaluating the fourth factor, the Triplett court further stated as follows:
 "For the Doggett court, the role that this presumptive prejudice is to play is related directly to the reason for the delay. Where the defendant himself causes the delay, by going into hiding, for instance, and the government pursues him with reasonable diligence, a speedy trial claim would fail. [Doggett, 505 U.S.] at 656, 112 S.Ct. at 2693, 120 L.Ed.2d 531. Where the delay is caused by the government's intentional footdragging in order to gain some impermissible advantage at trial, the delay will be weighed heavily against the government. 'Between diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupies the middle ground.' Id.
at 656-657, 112 S.Ct. at 2693, 120 L.Ed.2d at 531. Negligence, however, 'still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun.' Id. at 657, 112 S.Ct. at 2693, 120 L.Ed.2d at 531-532. The longer the delay due to official negligence, the less tolerable the delay becomes. Id. at 657, 112 S.Ct. at 2693, 120 L.Ed.2d at 532. The eight-and-one-half-year delay in Doggett's case, with six years directly attributable to the government's negligence, was too much for the court to countenance."
Triplett, 78 Ohio St.3d at 570-71, 679 N.E.2d at 294.
In Triplett, the court reasoned that the "genesis" for the delay in bringing the defendant to trial resulted from the defendant's failure to accept certified mail. Id.78 Ohio St.3d at 571, 679 N.E.2d at 294. While the court also noted that the law enforcement officers "did not do all they could to apprehend [the defendant]," the court found that the officers' failure to actively pursue the defendant was not fatal to the state's prosecution of the case. Id.
In the case at bar, assuming, arguendo, that the sixteen month delay between appellant's indictment and arrest was presumptively prejudicial, we nevertheless find no violation of appellant's constitutional right to a speedy trial.
While the first factor, the length of the delay, was quite long, sixteen months, we find that the impact upon theBarker analysis is negligible. We note that appellant was not incarcerated and had no knowledge of the charges until his arrest. Thus, as in Triplett, the Sixth Amendment speedy trial protections, freedom from incarceration and suffering through a prolonged period of public accusation, are not implicated.
The second factor, the cause of the delay, resulted from the state's inability to locate appellant. The state, unfortunately, obtained an address from an outdated source. While evidence exists in the record that at least one law enforcement officer knew appellant's most recent address, the law enforcement officer failed to provide the information to the prosecutor's office. Assuming that the state was negligent in its attempt to locate appellant, the second factor weighs slightly in appellant's favor. As the Triplett court noted, the state's failure to locate a defendant at a known address is not necessarily fatal to the prosecution.
The third factor, the defendant's assertion of his right to a speedy trial, also weighs in appellant's favor. Once arrested, appellant timely raised his right to a speedy trial.
The fourth factor, the prejudice to the defendant as a result of the delay, considered in light of the reasons for the delay and in light of the protections the Sixth Amendment was designed to protect, weighs against appellant. Appellant has not suggested that the delay between his indictment and arrest resulted from the state's desire to gain some impermissible advantage at trial. Rather, the parties do not dispute that the delay resulted from an outdated address listed on the arrest warrant. Furthermore, the speedy trial protections — preventing a defendant from a lengthy pretrial incarceration, reducing an accused's impairment of liberty, and shortening the disruption of life arrest and formal charges cause — are not implicated in the case at bar. Appellant, like the defendant inTriplett, was unaware that formal criminal charges were pending against him until his arrest in May of 1997.
We do not believe that appellant's claims of prejudice, considered in light of the foregoing two considerations, requires a finding that the state violated appellant's speedy trial rights. Appellant nevertheless argues that State v. Grant
(1995), 104 Ohio App.3d 28, 658 N.E.2d 326, supports his assertion that the sixteen month delay substantially impaired his ability to present a defense. We find, however, Grant
distinguishable from the case at bar.
In Grant, a seventeen month delay occurred between the defendant's indictment for drug abuse and arrest. During the seventeen month period, appellant's urine sample indicating that he had been under the influence of drugs was destroyed. The court concluded that the seventeen month delay "made it impossible for [the defendant] to have access to the only direct evidence in the state's case against him." Id., 103 Ohio App. 3
d at 36, 658 N.E.2d at 331. Consequently, the court ordered the trial court to dismiss the indictment.
Unlike Grant, in the case at bar appellant does not allege that the delay made it impossible for him to gain access to the state's only direct evidence. Rather, appellant contends that the delay hampered his ability to produce potential witnesses. We note that at least one court has rejected a similar claim of prejudice. See State v. Worthy (July 16, 1997), Lorain App. No. 96 CA 6576, unreported ("By asserting that but for the delay of thirteen months, he may have been able to meet the state's case by providing alibi witnesses and other witnesses, [the defendant] falls well short of showing * * * prejudice * * *.").
Although we do not take appellant's claim of prejudice lightly, considering the four factors in toto leads us to agree with the trial court's conclusion that no violation of appellant's constitutional speedy trial rights occurred. As the Court advised in Barker:
 "We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process."
Barker, 407 U.S. at 533, 92 S.Ct. at 2193, 33 L.Ed.2d 101
(footnote omitted).
Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
[1] We note that in State v. Selvage (1997), 80 Ohio St.3d 465,687 N.E.2d 433 (quoting State v. Meeker (1971), 26 Ohio St.2d 9, 268 N.E.2d 589, paragraph one of the syllabus), the Ohio Supreme Court re-affirmed the principle that " '[t]he constitutional guarantees of a speedy trial are applicable to unjustifiable delays in commencing prosecution, as well as to unjustifiable delays after indictment.' " The Selvage court noted, however, that the speedy the subject of "official accusation":
 "In State v. Luck (1984), 15 Ohio St.3d 150, 153, 15 OBR 296, 299, 472 N.E.2d 1097, 1101, this court limited the application of Meeker to those cases that are factually similar to it. We believe that the facts herein are analogous to Meeker and, thus, we find that the holding in Meeker is applicable to the instant matter. In Luck, the defendant was indicted nearly sixteen years after the offense. The court distinguished Luck from Meeker on the basis that the defendant in Luck 'was not the subject of any official prosecution' until her indictment, so the court found that the delay between the offense and the indictment was not covered by the speedy trial guarantee. (Emphasis added.) Id.
at 153, 15 OBR at 299, 472 N.E.2d at 1101. The appellee in this case, as well as the defendant in Meeker, was the subject of an official prosecution, i.e., official accusation. Thus, the delay between accusation and indictment triggered the protection afforded by the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution."
Selvage, 80 Ohio St.3d at 466 n. 1, 687 N.E.2d at 435.
Thus, if a defendant is the subject of official accusation prior to indictment, the four-part test applicable to alleged constitutional speedy trial violations set forth in Barker v.Wingo (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, governs. When the defendant is not the subject of official accusation, however, a delay in commencing prosecution does not implicate the defendant's constitutional speedy trial rights.United States v. Marion (1971), 404 U.S. 307, 92 S.Ct. 455,30 L.Ed.2d 468; State v. Luck (1984), 15 Ohio St.3d 150, 153,472 N.E.2d 1097, 1102. Rather, the defendant may assert that the delay in commencing prosecution violated his due process rights. United States v. Lovasco (1977), 431 U.S. 783,97 S.Ct. 2044, 52 L.Ed.2d 752; Marion; Luck.
In the case at bar, we note that the parties do not dispute that the due process analysis set forth in Lovasco and its progeny governs our analysis.