JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, Lang Dunbar, appeals the July 15, 2006 judgment of the Cuyahoga County Court of Common Pleas, finding him guilty of abduction and sentencing him to two years in prison.
 {¶ 2} The facts which give rise to this appeal are undisputed. On November 7, 2004, Dunbar struck his live-in fiancé ("the victim") in the face and head with a closed fist multiple times, causing her to fall to the floor, where he then began to grab at her and twist her legs, causing her severe pain. While she was lying in a fetal position on the floor, he kicked her several times. Dunbar and the victim are the parents of two minor children. The minor children were present during the incident, witnessed the violence against their mother, and tried to protect her, but Dunbar pushed them away. Further, Dunbar would not allow the victim to leave the house after the incident because he did not want others to see what he had done to her.
 {¶ 3} The victim filed a complaint against Dunbar with the Cleveland Police Department on November 20, 2004. Six days later, in Cleveland Municipal Court, Case No. 2004CRB037418, Dunbar was charged with domestic violence, in violation of R.C. 2919.25, stemming from the November 7, 2004 incident. On December 7, *Page 4 
2004, Dunbar entered a plea of no contest to the charge and was sentenced to one hundred eighty days in the Cleveland Workhouse.[1]
 {¶ 4} On January 7, 2005, Dunbar was indicted by the Cuyahoga County Grand Jury on three counts of abduction, in violation of R.C. 2905.02, felonies of the third degree, and one count of domestic violence, in violation of R.C. 2919.25. These charges arose from the November 7, 2004 incident. Dunbar entered a plea of not guilty to the charges.
 {¶ 5} On May 9, 2005, the first scheduled trial date ("first plea hearing"), the state presented the negotiated plea agreement to the trial court on the record. Essentially, in exchange for a guilty plea of one count of a felony-three abduction, the state agreed to recommend to the trial court that the remaining three counts of the indictment be nolled and that Dunbar receive community control sanctions, rather than prison. However, Dunbar informed the trial court that he refused to enter into the plea. After Dunbar refused to accept the plea, the state moved the trial court for a continuance because the victim was not available.
 {¶ 6} On June 13, 2005, the continued trial date ("second plea hearing"), Dunbar withdrew his former plea of not guilty and entered a plea of guilty to one count of abduction, a felony of the third degree, in violation of R.C. 2905.02. The state *Page 5 
 {¶ 7} indicated that as part of the plea, it had agreed to a term of community control sanctions or probation in exchange for the plea. The trial court accepted Dunbar's guilty plea and entered a nolle prosequi on the remaining counts in the indictment. The trial court deferred sentencing and ordered Dunbar to not have any contact with the victim, placed him on a $10,000 personal bond, and ordered him to submit to a pre-sentence investigation report.
 {¶ 8} At the July 12, 2005 sentencing hearing, which was journalized on July 15, 2005, the trial court sentenced Dunbar to two years in prison, and informed him that he would be placed on post-release control for three years, with drug counseling and testing. It is from the July 15, 2005 judgment which Dunbar appeals, raising the following six assignments of error:
 {¶ 9} "[1.] The indictment for domestic violence and abduction violated [Dunbar's] rights under the Fifth and Fourteenth Amendments because he had already plead guilty to domestic violence in municipal court based on the same incident.
 {¶ 10} "[2.] The trial court violated [Dunbar's] rights under the constitution's Sixth Amendment when it failed to vacate [Dunbar's] guilty plea after concluding that he had breached the plea agreement and instead imposed a two-year sentence rather than the sentence of probation it previously agreed to impose.
 {¶ 11} "[3.] This court should vacate [Dunbar's] guilty plea because the record demonstrates that it was coerced and was there involuntary. *Page 6 
 {¶ 12} "[4.] Trial counsel was ineffective for failing to seek this indictment's dismissal where it violated his client's rights under the Fifth[,] Sixth[,] and Fourteenth Amendments of the Constitution.
 {¶ 13} "[5.] The trial court erred by imposing an additional sentence for the abduction plea conviction without considering whether that and the previous plea conviction for domestic violence were allied offenses pursuant to R.C. 2941.25.
 {¶ 14} "[6.] [Dunbar] was denied due process right to go to trial (i.e. plea hearing) within the specified statutory time frame when new and additional charges were brought against him from the same facts as the original charges pursuant to R.C. 2945.71."[2]
 {¶ 15} In his first assignment of error, Dunbar contends that the "successive prosecution violated his understanding at the time he entered the no contest plea to domestic violence, that such an undertaking would resolve the case for good and that no further charges based on the incident would be pursued." For the following reasons, Dunbar's argument is without merit.
 {¶ 16} In State v. Carpenter (1993), 68 Ohio St.3d 59, syllabus, the Supreme Court of Ohio held: *Page 7 
 {¶ 17} "[t]he state cannot indict a defendant * * * after the court has accepted a negotiated guilty plea to a lesser offense * * * unless the state expressly reserves the right to file additional charges on the record at the time of the defendant's plea."
 {¶ 18} The Supreme Court explained in State v. Zima,102 Ohio St.3d 61, at ¶ 11:
 {¶ 19} "[t]he holding in Carpenter is essentially a synthesis of contract and criminal law in a particular factual setting. Its supporting analysis is ultimately derived from the proposition that plea agreements are a necessary and desirable part of the administration of criminal justice and, therefore, `"must be attended by safeguards to insure the defendant what is reasonably due in the circumstances."' [Carpenter at 61], quoting Santobello v. New York (1971), 404 U.S. 257,262 * * *. The court in Carpenter found that under the circumstances of that case, the defendant reasonably `anticipated that by pleading guilty to attempted felonious assault, and giving up rights which may have resulted in his acquittal, he was terminating the incident and could not be called on to account further on any charges regarding this incident.' Id. at 61-62 * * *. In order to enforce this expectation, the court found it necessary to recognize what is basically an implied promise on the part of the state not to prosecute the defendant for any further offenses that may arise out of the same incident. * * *" (Parallel citations omitted.)
 {¶ 20} Dunbar claims that Carpenter is instructive to the case sub judice. He claims that "the state" possessed all of the information that it needed to prosecute *Page 8 
the case either as a misdemeanor domestic violence or a felony abduction at the time he entered a no-contest plea in municipal court. He further maintains that "[t]he [c]ity did not reserve the right to bring additional charges at the time of the plea." There are several problems with Dunbar's arguments.
 {¶ 21} First, "the state" and "the city" are not the same parties concerning a plea agreement. Dunbar asserts "[t]he fact that the [c]ity and [c]ounty [p]rosecutors are different entities is of no consequence." In support of this argument, he quotes State v. Best (1975),42 Ohio St.2d 530, paragraph one of the syllabus, "[b]oth the state and municipal corporations derive their authority from the same organic authority — the Ohio Constitution." We agree that is the holding inBest, however, the Supreme Court in Best was referring to double jeopardy, not plea agreements. Id. at 532 ("[t]he specific issue presented for consideration is whether defendant's conviction under the indictment precludes his being tried for the municipal ordinance charges under the doctrine of double jeopardy."). In addition, there is no evidence in the case at hand of what the actual terms of the plea in municipal court were, since Dunbar did not file a transcript from the municipal court case. Even if he had, or even if we assume that he is relying on an implied promise, "`(a) defendant should be aware that a plea taken before a municipal court judge with limited criminal jurisdiction might not dispose of the matter fully.'" State v.Zima, *Page 9 102 Ohio St.3d 61, at ¶ 14, quoting State v. Zima, 8th Dist. No. 80824, 2002-Ohio-6327, at ¶ 44 (Kilbane, J., concurring in part and dissenting in part).
 {¶ 22} In Zima at ¶ 12, the Supreme Court distinguishedCarpenter, stating "* * * the defendant's expectation that his guilty plea would terminate the incident was inherently justified because the prosecutor and the court had jurisdiction over all the charges, both actual and potential, and because the negotiated guilty plea included the dismissal of all pending charges. In the absence of these or equivalent circumstances, however, it would be exceedingly difficult to sustain a defendant's belief that no further charges will be brought or prosecuted."
 {¶ 23} Dunbar argues that Zima is distinguishable on the facts because when the defendant in Zima entered into her plea in municipal court, "she was fully aware that the Common Pleas case remained pending." That is simply an incorrect statement. The Supreme Court of Ohio stated inZima at ¶ 2, "[i]t is undisputed that Zima was not aware of the indictment at the time of her plea."
 {¶ 24} Thus, Dunbar has not articulated circumstances showing why his belief that his plea in the municipal court would bar subsequent prosecutions in the common pleas court.
 {¶ 25} Dunbar also contends under the first assignment of error that the felony indictment in the common pleas court subjected him to double prosecution and punishment based on the same conduct. It is within this context that we agree that "[b]oth the state and municipal corporations derive their authority from the same *Page 10 
organic authority — the Ohio Constitution. Ordinances and statutes enacted by the legislative bodies of the state and its municipalities are enforced through judicial tribunals created by the state. There is no dual sovereignty between the state and municipal governments."Best, supra, paragraph one of the syllabus.
 {¶ 26} Double jeopardy was established by the Fifth Amendment to the Constitution of the United States, which states: "[n]o person shall * * * be subject for the same offense to be twice put in jeopardy of life or limb * * *." The Fifth Amendment has been made applicable to the states through the Fourteenth Amendment. It is well established that the Double Jeopardy Clause protects against successive prosecutions for the same offense. United States v. Dixon (1993), 509 U.S. 688, 696.
 {¶ 27} To determine whether a defendant is being successively prosecuted for the same offense, "the court in Best adopted the so-called `same elements' test articulated in Blockburger v.United States (1932), 284 U.S. 299 * * *, and held:
 {¶ 28} `The applicable rule under the Fifth Amendment is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not. A single act may be an offense against two statutes, and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment *Page 11 
 {¶ 29} under the other.' Best at paragraph three of the syllabus."Zima, supra, at ¶ 17-18.
 {¶ 30} The Supreme Court went on to explain this test in Zima at Tf20:
 {¶ 31} "In State v. Thomas (1980), 61 Ohio St.2d 254, 259 * * *, overruled on other grounds in State v. Crago (1990), 53 Ohio St.3d 243
* * *, syllabus, the court explained, `This test focuses upon the elements of the two statutory provisions, not upon the evidence proffered in a given case.' Thus, as summarized in [Dixon, supra, at 696] * * *, theBlockburger test Inquires whether each offense contains an element not contained in the other; if not, they are the "same offense" and double jeopardy bars additional punishment and successive prosecution.'" (Parallel citations omitted.)
 {¶ 32} In the case at bar, Dunbar was first convicted of domestic violence under R.C. 2919.25 in Cleveland Municipal Court. This provision states:
 {¶ 33} "(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member[;]
 {¶ 34} "(B) No person shall recklessly cause serious physical harm to a family or household member[;]
 {¶ 35} "(C) No person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical *Page 12 
 {¶ 36} harm to the family or household member."[3]
 {¶ 37} The state then brought charges in the common pleas court against Dunbar for domestic violence, pursuant to R.C. 2919.25(A), and for three counts of abduction, under R.C. 2905.02(A)(2).[4] This provision provides that "[n]o person, without privilege to do so, shall knowingly * * * [b]y force or threat, restrain the liberty of another person, under circumstances which create a risk of physical harm to the victim, or place the other person in fear[.]"
 {¶ 38} Under the Blockburger test, it is clear that each offense contains an element which is not contained in the other for purposes of double jeopardy. Regardless of what section of R.C. 2919.25 Dunbar was convicted of in municipal court, an essential element of each section is that the offense must be against a family or household member. R.C. 2805.02(A)(2) does not limit abduction to family or household members. Likewise, abduction contains the element of restraint, which domestic violence does not.[5] Thus, we conclude that the principles of double jeopardy do not apply to bar successive prosecutions for domestic violence and abduction. *Page 13 
 {¶ 39} Finally, under his first assignment, Dunbar maintains that collateral estoppel can apply to bar prosecutions, even where double jeopardy does not.
 {¶ 40} In State v. Lovejoy, 79 Ohio St.3d 440, 443-444, the Supreme Court of Ohio explained:
 {¶ 41} "Collateral estoppel is the doctrine that recognizes that a determination of facts litigated between two parties in a proceeding is binding on those parties in all future proceedings. Collateral estoppel `means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. * * *' [Ashe v.Swensen (1970), 397 U.S. 436, 443]. Collateral estoppel generally refers to the acquittal prong of double jeopardy."[6]
 {¶ 42} In the case at hand, Dunbar was not acquitted in a prior proceeding. Instead, he pled no contest to misdemeanor domestic violence and was found guilty of that charge. Consequently, there are no issues or factual findings in Dunbar's favor (nor does he now claim any such facts) to which collateral estoppel might apply. By pleading no contest, Dunbar admitted the facts in the complaint. Thus, *Page 14 
there are no facts or issues which were decided in his favor to collaterally estop the subsequent indictment. See State v.Thompson, 2d Dist. No. 20114, 2004-Ohio-1320, ¶ 56-60.
 {¶ 43} Accordingly, Dunbar's first assignment of error is without merit.
 {¶ 44} In his second assignment of error, Dunbar argues that the trial court erred when it failed to vacate his guilty plea after it concluded that he breached the agreement. He maintains the trial court erred in four respects: (1) he contends that his guilty plea was coerced and involuntary from the outset; (2) if he did indeed breach the agreement, the trial court should have vacated the plea, rather than proceed to open sentencing; (3) that he did not breach the agreement by failing to submit to a drug screen; and (4) the trial court's findings justifying its imposition of a two-year prison term were erroneous.
 {¶ 45} The first issue presented under Dunbar's second assignment, that the trial court erred by not vacating his guilty plea because it was coerced and involuntary, is identical to his third assignment of error, and thus, we will address them concomitantly.
 {¶ 46} Appellant filed a motion to withdraw his guilty plea on October 6, 2005, three months after he was sentenced. However, he filed a notice of appeal and motion for delayed appeal on November 18, 2005, before the trial court decided his *Page 15 
motion to withdraw his guilty plea.[7] Thus, we presume the trial court as having denied the motion.
 {¶ 47} Crim.R. 32.1, which governs motions to withdraw guilty pleas, states:
 {¶ 48} "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her guilty plea."
 {¶ 49} The decision to grant or deny a motion to withdraw a guilty plea lies within the sound discretion of the trial court. State v.Smith (1977), 49 Ohio St.2d 261, 264.
 {¶ 50} Generally, a presentence motion to withdraw a guilty plea is to be freely and liberally granted. State v. Xie (1992), 62 Ohio St.3d 521,526. After sentencing, the defendant must show that his motion to withdraw his plea of guilty is to correct a manifest injustice. It is addressed to the court's sound discretion. Smith, supra, at 261. A post-sentence motion to vacate a plea is only permitted in extraordinary cases because the "accused might be encouraged to plead guilty to test the weight of potential punishment, and withdraw the plea if the sentence were unexpectedly severe." State v. Peterseim (1980),68 Ohio App. 2d 211, 213. *Page 16 
 {¶ 51} In the case sub judice, appellant claims that the state coerced him into accepting the plea, and that "[n]ot surprisingly the trial court proceedings demonstrate that Mr. Dunbar was extremely reluctant to plead guilty to a felony offense in this case." We agree at his first plea hearing, that Dunbar was reluctant to plead guilty. Indeed, he informed the trial court that he refused to accept the plea. However, as set forth below, he voluntarily accepted the plea at his second plea hearing, which was held almost five weeks later.
 {¶ 52} The Ohio Supreme Court has stated that an appellate court must look to the totality of the circumstances to determine whether a defendant entered his guilty plea in a voluntary, intelligent and knowing manner. State v. Nero (1990), 56 Ohio St.3d 106, 108. The Ohio Supreme Court has further held:
 {¶ 53} "[w]here the record affirmatively discloses that: (1) defendant's guilty plea was not the result of coercion, deception or intimidation; (2) counsel was present at the time of the plea; (3) counsel's advice was competent in light of the circumstances surrounding the indictment; (4) the plea was made with the understanding of the nature of the charges; and (5) defendant was motivated either by a desire to seek a lesser penalty or a fear of the consequences of a jury trial, or both, the guilty plea has been voluntarily and intelligently made." State v. Piacella (1971), 27 Ohio St.2d 92, syllabus. *Page 17 
 {¶ 54} The record affirmatively reveals that Dunbar, with his counsel present at both plea hearings, knowingly, voluntarily, and intelligently accepted the plea being offered by the state at his second plea hearing.[8]
 {¶ 55} At the plea hearing on June 13, 2005, the state informed the trial court that: "this matter has been fully pretried with defense counsel. At this time, the [s]tate of Ohio would move to amend this four-count indictment and move to nolle [c]ounts 2, 3 and 4, leaving [c]ount 1 as charged, abduction, a felony of the third degree, carrying possible term of incarceration of between one and five years and up to a $10,000 fine. Also, as part of this plea the [s]tate would agree to [a] term of community controlled sanctions or probation in exchange for the forthcoming plea." Dunbar's counsel then stated that was also his understanding of the plea.
 {¶ 56} The trial court then addressed Dunbar. The following exchange occurred:
 {¶ 57} "THE COURT: Do you wish to take this plea agreement?
 {¶ 58} "THE DEFENDANT: Take the plea agreement.
 {¶ 59} "THE COURT: So your answer is yes?
 {¶ 60} "THE DEFENDANT: Yes.
 {¶ 61} "THE COURT: How far did you go in school?
 {¶ 62} "THE DEFENDANT: I have a four year degree. *Page 18 
 {¶ 63} "THE COURT: From where?
 {¶ 64} "THE DEFENDANT: Ashland University.
 {¶ 65} "THE COURT: Are you able to understand this proceeding as it is occurring?
 {¶ 66} "THE DEFENDANT: Yes.
 {¶ 67} "THE COURT: How old are you?
 {¶ 68} "THE DEFENDANT: I'm 39.
 {¶ 69} "THE COURT: Right now are you under the influence of drugs or alcohol?
 {¶ 70} "THE DEFENDANT: No, I am not.
 {¶ 71} "THE COURT: Are you satisfied with the representation you have received
 {¶ 72} from your lawyer?
 {¶ 73} "THE DEFENDANT: Yes.
 {¶ 74} "THE COURT: Do you understand that upon entering your plea of guilty you are waiving or giving up certain constitutional and trial rights?
 {¶ 75} "THE DEFENDANT: Yes.
 {¶ 76} "THE COURT: I am going to review each right with you; let me know you understand each right by saying yes out loud. Do you understand you have a right to a trial by jury or by a judge? *Page 19 
 {¶ 77} "THE DEFENDANT: Yes.
 {¶ 78} "THE COURT: To subpoena witnesses to appear and testify on your own behalf?
 {¶ 79} "THE DEFENDANT: Yes.
 {¶ 80} "THE COURT: To have your lawyer cross examine each and every witness that will be called by the [s]tate of Ohio?
 {¶ 81} "THE DEFENDANT: Yes.
 {¶ 82} "THE COURT: To have the [s]tate of Ohio prove your guilt by evidence beyond a reasonable doubt?
 {¶ 83} "THE DEFENDANT: Yes
 {¶ 84} "THE COURT: To remain silent and not testify and no one could comment on the fact that you did not testify at trial?
 {¶ 85} "THE DEFENDANT: Yes.
 {¶ 86} "THE COURT: Do you understand the offense to which you are pleading guilty, that being a felony of the third degree, it is possibly punishable from one to five years in yearly increments. It carries with it a maximum discretionary fine of $10,000. Do you understand that?
 {¶ 87} "THE DEFENDANT: Yes.
 {¶ 88} "THE COURT: Sir, if you are sent to prison on this case, that upon your release from prison the Ohio Parole Board may impose a period of post-release *Page 20 
control not to exceed three years. They may impose conditions and sanctions. Should you decide to commit an act that causes you to be found in violation of your post-release control, you can be remanded to an Ohio penal institution for an additional 50 percent of your original sentence. Do you understand that?
 {¶ 89} "THE DEFENDANT: Yes.
 {¶ 90} "THE COURT: Are you currently on probation, parole or post-release control?
 {¶ 91} "THE DEFENDANT: Probation in Maple Heights. It's inactive.
 {¶ 92} "THE COURT: You understand, sir, that any previously suspended sentence may now be ordered into execution as a result of this plea?
 {¶ 93} "THE DEFENDANT: Yes.
 {¶ 94} "THE COURT: Has anyone made any promises or threats in order to induce you to change your plea?
 {¶ 95} "THE DEFENDANT: No.
 {¶ 96} "THE COURT: Do you understand that legally the [c]ourt could proceed to sentencing after your plea today?
 {¶ 97} "THE DEFENDANT: Yes.
 {¶ 98} "* * *
 {¶ 99} "THE COURT: How do you plead; guilty or not guilty?
 {¶ 100} "THE DEFENDANT: Guilty. *Page 21 
 {¶ 101} "THE COURT: And are you in fact guilty, sir?
 {¶ 102} "THE DEFENDANT: Yes.
 {¶ 103} "THE COURT: Let the record reflect the [c]ourt finds the defendant has knowingly and voluntarily entered his plea with a full understanding of his constitution and trial rights and has further acknowledged his participation and, therefore, his guilt in this instances. [sic]
 {¶ 104} "Counselors, are you satisfied that Rule 11 has been complied with?
 {¶ 105} "[THE PROSEUTOR]: Yes, your honor.
 {¶ 106} "[DEFENSE COUNSEL]: Yes, your honor.
 {¶ 107} "THE COURT: Therefore, the Court will accept your plea of guilty."
 {¶ 108} After reviewing the record here, we agree with the trial court that Dunbar's guilty plea was knowingly and voluntarily made with respect to understanding the charges against him and the constitutional rights he was waiving.
 {¶ 109} Dunbar further contends that the state coerced him into accepting a guilty plea by threatening him at the first plea hearing with indictments of higher degree felonies and by informing the trial court that the state had offered Dunbar a "pretty phenomenal plea." We disagree. *Page 22 
 {¶ 110} Plea bargaining is not analogous to the defendant's right of appeal, and unlike a threat to impose a penalty if defendant appeals, as part of the prosecutor's power to negotiate on an equal basis with the defendant, he can threaten to step up the charges if the defendant refuses to plead guilty. Voluntary means that the defendant has a choice, no matter how bad the consequences. Bordenkercher v. Hays
(1978), 434 U.S. 357, 364. Thus, the state did not coerce Dunbar into accepting a guilty plea.
 {¶ 111} Next, we will address Dunbar's second and third arguments under his second assignment of error, since they are interrelated; i.e., that he did not breach the agreement by failing to submit to a drug screen, and if he did breach it, the trial court should have vacated his plea, rather than proceed to open sentencing.
 {¶ 112} Dunbar contends that the trial court judge erred by imposing a greater sentence "where she had already agreed to accept [probation]." We disagree with this statement. The trial court judge never stated that she agreed to impose community control sanctions.
 {¶ 113} Indeed, a trial court is vested with sound discretion when implementing plea agreements. State v. Buchanan, 154 Ohio App.3d 250,2003-Ohio-4772 at ¶ 13, citing Akron v. Ragsdale (1978),61 Ohio App.2d 107. The court is not obligated to follow the negotiated plea entered into between the state and the defendant. Id. However, once the court approves the plea agreement, its ability to deviate from it is limited.State v. Allgood (June 19, 1991), 9th Dist. *Page 23 
No. 90CA004903, 90CA004904, 90CA004905, and 90CA004907, 1991 Ohio App. LEXIS 2972, at 3, citing U.S. v. Holman (C.A.6 1984), 728 F.2d 809, certiorari denied (1984), 469 U.S. 983.
 {¶ 114} In Warren v. Cromley (Jan. 29, 1999), 11th Dist. No. 97-T-0213, 1999 Ohio App. LEXIS 206, at 7-8, referring to the trial court's sound discretion on whether to accept a negotiated plea, the court stated:
 {¶ 115} "* * * the law is somewhat less settled in those cases where the trial court appears to indicate that it accepts the negotiated plea agreement before the court accepts the defendant's plea, and then deviates from the recommended sentence or terms contained within the plea agreement at the time of sentencing. The analysis in these scenarios turns to due process concerns over whether the accused was puton [notice] that the trial court might deviate from the recommended sentence or other terms of the agreement before the accused entered his plea and whether the accused was given an opportunity to change or towithdraw his plea when he received this notice. See, generally, Katz Giannelli, Criminal Law (1996) 154-155, Section 44.8. n2" (Emphasis sic.)
 {¶ 116} "A trial court does not err by imposing a sentence greater than `that forming the inducement for the defendant to plead guilty when the trial court forewarns the defendant of the applicable penalties, including the possibility of imposing a greater sentence than that recommended by the prosecutor.'" Buchanan, supra, at ¶ 13, citingState v. Darmour (1987), 38 Ohio App.3d 160 *Page 24 
(Eighth District case holding that "no abuse of discretion is present when the trial court forewarns a defendant that it will not consider itself bound by any sentencing agreement and defendant fails to change his plea). See, also, State v. Mayle, 11th Dist. No. 2002-A-0110,2004-Ohio-2203 (stating courts are not bound to accept the state's recommended sentence as part of a negotiated plea agreement); State v.Tucci, 7th Dist. No. 01CA234, 2002-Ohio-6903 (stating before the court even sentences the defendant, it must ascertain that the defendant understands that it can impose a higher sentence than that recommended by the prosecution and that no one promised him anything less than the maximum sentence).
 {¶ 117} The first issue in the case sub judice then, taking into consideration the totality of the circumstances, is whether the trial court accepted the plea agreement before it deviated from the recommended sentence, and whether Dunbar was put on notice that the trial court might deviate from the recommended sentence. Nero, supra, at 108.
 {¶ 118} We already recited the testimony of the exchange between the trial court judge and Dunbar as to whether he knowingly, voluntarily, and intelligently pleaded guilty. The following exchange is also pertinent to our discussion here. After the court stated that it would accept Dunbar's guilty plea, it went on to say:
 {¶ 119} "THE COURT: Counsel, is there anything you would like to say?
 {¶ 120} "[DEFENSE COUNSEL]: Yes, Judge. As the prosecutor indicated, part and parcel of the plea agreement is that ultimately he be put on *Page 25 
probation. I understand under the law he has to get a PSI in order to get probation in the [s]tate of Ohio, therefore, we ask you to refer this matter to the probation department for compilation of a PSI.
 {¶ 121} "And I believe as part and parcel of the plea there be a no contact order between him and the victim of the case. We'd ask you, given that he's ultimately going to be put on probation, to give him a personal bond. He understands if there is any contact with the within the 30-day period, that this [c]ourt would not be bound by any terms of the plea agreement.
 {¶ 122} "THE COURT: Mr. Dunbar, do you understand what your lawyer just said?
 {¶ 123} "THE DEFENDANT: Yes ma'am.
 {¶ 124} "THE COURT: That means if you have any contact with the victim in this case that all agreements with reference to probation as well as your bond would be cancelled; do you understand that?
 {¶ 125} "THE DEFENDANT: Yes, ma'am.
 {¶ 126} "THE COURT: The case will be referred to the probation department to return for sentencing on July 12th. * * * [H]is bond is $10,000.
 {¶ 127} "* * *
 {¶ 128} "THE COURT: * * * Sir, if you violate the conditions of this bond, which is a no contact order, which will remain in effect during the time that your case is in this [c]ourt, then you would not only be subject to the full penalties of this, of the *Page 26 
possibilities of this case, but also some in this [c]ourt. $10,000, do you understand that?
 {¶ 129} "THE DEFENDANT: Yes, your Honor."
 {¶ 130} After reviewing this testimony, it is clear from record that the trial court judge accepted Dunbar's guilty plea, but it is not as clear as to whether she accepted the sentencing aspect of the agreement. As such, this court must determine if Dunbar had a reasonable expectation that the trial court would implement the agreed sentence. We conclude, after reviewing the record in its entirety, that Dunbar had a reasonable expectation that he would get community control sanctions.
 {¶ 131} The trial court judge did not forewarn Dunbar that she could deviate from the recommended sentence and that he could in fact receive prison, rather than community control. Nor did the trial court judge inform Dunbar that if he did not cooperate with the presentence investigation, that he could go to prison. She only stressed to Dunbar that if he had any contact with the victim, his bond would be revoked, the plea would be null and void, and that he could receive the full penalty under the law.
 {¶ 132} Thus, we agree with Dunbar that he did not breach any part of the agreement that he knowingly entered into with the state. Under basic contract principles, which are the basis for plea negotiations, Dunbar knowingly and voluntarily entered into an agreement where he understood that by pleading guilty, *Page 27 
he did not have to go to prison. As the prosecutor put it, this was a "pretty phenomenal plea," and not having to go to prison was certainly an integral part of the bargain.[9] The only condition, as he understood it, was that if he had any contact with the victim, the plea would be null and void. Upon consideration of the facts and circumstances in this case, we conclude that the trial court abused its discretion when it did not impose community control sanctions, or, as explained in the following analysis, allow Dunbar to vacate his plea.
 {¶ 133} In Santobello, supra, at 262, the United States Supreme Court stated:
 {¶ 134} "* * * [the plea] phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled
 {¶ 135} Although Santobello dealt with a promise broken by the prosecutor, the underlying principle of reliance also applies to the facts at bar.
 {¶ 136} In Allgood, supra, at 5-7, the court stated: *Page 28 
 {¶ 137} "[u]nder the Federal Rules of Criminal Procedure, once the court accepts a plea agreement the defendant and the prosecutor are bound. See [U.S. v. Cruz (C.A. 1, 1983), 709 F.2d 111, 114]; See also,United States v. Ocanas (C.A. 5, 1980), 628 F.2d 353, 358, certiorari denied (1981), 451 U.S. 984.
 {¶ 138} "`(* * *) If the plea is accepted, the judge does not announce any deferral of that acceptance, and the defendant adheres to the terms of the bargain, all parties to it are bound [* * *].' * * * United Statesv. Kurkculer (C.A. 1, 1990), 918 F.2d 295, 301, quoting Cruz, supra, at 115.
 {¶ 139} "The same rule appears to apply in Ohio. The [Second District] Court of Appeals decided a case very similar to this case, where the trial court imposed consecutive sentences after the defendant failed to appear for sentencing, when the plea agreement called for concurrent sentences. State v. Brown (Aug. 3, 1988), [2d Dist.] No. 10653 * * *. That appellate court placed great emphasis on whether the trial court had approved the plea agreement, and its opinion suggests that if the trial court had in fact approved the plea agreement, it would have been prejudicial error to fail to follow it. Id. at 3."
 {¶ 140} Crim.R. 11 requires that the defendant be fully aware of the potential consequences of his plea. "Where a sentence recommendation is an integral part of a plea agreement, the failure to inform the defendant of potential changes may result in a plea that was not entered into knowingly, voluntarily, or intelligently." Allgood, supra, at 9. Although the trial court advised Dunbar of the *Page 29 
potential range for the charge, it did not state that it could impose prison, rather than community control. Nor did it inform Dunbar that in order to comply with his part of the bargain, that he had to do anything but stay away from the victim.
 {¶ 141} Moreover, when the court decided to deviate from the plea agreement, it should have clearly advised Dunbar of its intentions, and allowed him to reconsider his plea. See, Allgood, at 10. If Dunbar had then chosen to still plead guilty, the court could not have been found to have abused its discretion in ordering a two-year prison term, rather than community control, because then Dunbar would have been fully informed as to potential sentences. See State v. Thompson (June 1, 1988), 9th Dist. No. 13368, 1988 Ohio App. LEXIS 2098, andDarmour, supra.
 {¶ 142} As such, we conclude that the trial court erred by failing to either forewarn Dunbar of the potential for prison at the plea hearing or give him the opportunity to withdraw his guilty plea at the sentencing hearing.
 {¶ 143} In light of our holding in the previous section, it is not necessary to address the final issue under Dunbar's second assignment, that the trial court erred when it concluded at sentencing that he had committed this offense while under probation or sanctions. Although, we briefly note that the record is not clear as to what probation Dunbar was on when he committed the offense (November 4, 2004), or at the time of sentencing.
 {¶ 144} Accordingly, appellant's second assignment of error has merit in part. *Page 30 
 {¶ 145} We have already addressed Dunbar's third assignment of error, an thus, we now turn to his fourth assignment of error. In this assignment, Dunbar asserts that his trial counsel was ineffective based upon the fact that his counsel did not raise the issue with the trial court that the state should have been collaterally estopped from proceeding on this indictment after he pled guilty to domestic violence in Cleveland Municipal Court.
 {¶ 146} Since we already concluded in Dunbar's first assignment of error that collateral estoppel was not applicable to abduction charge, it is clear that his counsel was effective when she did not raise the issue with the trial court.
 {¶ 147} Further, "[a] guilty plea waives the right to appeal issues of ineffective assistance of counsel, unless the ineffective assistance of counsel caused the guilty plea to be involuntary. State v. Barnett
(1991), 73 Ohio App.3d 244, 248. Dunbar does not argue this.
 {¶ 148} Thus, appellant's fourth assignment of error lacks merit.
 {¶ 149} In his fifth assignment of error (or his first pro se assignment), appellant argues that the trial court erred when it imposed a sentence for the abduction charge, because domestic violence and abduction are allied offenses under R.C. 2941.25.
 {¶ 150} R.C. 2941.25 provides that:
 {¶ 151} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information *Page 31 
may contain counts for all such offenses, but the defendant may be convicted of only one.
 {¶ 152} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
 {¶ 153} In order to determine whether multiple crimes should be merged, the Ohio Supreme Court has developed a two-step test: first, the court must determine whether the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other. State v. Nicholas (1993), 66 Ohio St.3d 431,434, citing State v. Blankenship (1993), Ohio St.3d 116. If so, the crimes are allied offenses of similar import.
 {¶ 154} However, the inquiry does not stop there. If the offenses are allied and of similar import for purposes of the first step, the court must then address the second prong; namely, the court must review the defendant's conduct to determine whether he can be convicted of both offenses. If the court finds that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both. Thus, if the answer to the first prong is that the offenses are of similar import, then the court does not have to reach the second prong. Id. *Page 32 
 {¶ 155} Dunbar was convicted of domestic violence and abduction. We have already set forth the elements of these offenses in our discussion of Dunbar's first assignment of error, dealing with double jeopardy. Within that analysis, we already compared the elements of abduction and domestic violence. We concluded that under the Blockburger test, domestic violence and abduction each contains an essential element which is not contained in the other.
 {¶ 156} The same reasoning applies here. If each contains an element not contained in the other, then under Blankenship, the elements of the offenses do not "correspond to such a degree that the commission of one crime will result in the commission of the other." Id. at 117. Thus, the crimes are not allied offenses of similar import. Having concluding as much, we need not reach the second prong. Appellant's fifth assignment of error lacks merit.
 {¶ 157} In his sixth and final assignment of error (or second pro se assignment), Dunbar argues that he was denied his due process right to a speedy trial.
 {¶ 158} The entry of a valid guilty plea under Crim.R. 11 normally acts as a waiver of an appellant's right to raise the speedy trial issue on appeal. State v. Kelley (1991), 57 Ohio St.3d 127, 130, citingMontpelier v. Greeno (1986), 25 Ohio St.3d 170. If, however, the guilty plea is vacated as a nullity, then an appellant may raise his or her speedy trial rights on appeal. State v. Ball (1990), *Page 33 66 Ohio App.3d 224, 227. Since we are vacating Dunbar's plea under the second assignment of error, we will address this argument.
 {¶ 159} The Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution, guarantee a criminally accused the right to a speedy trial of the charges brought against him or her. State v. Ladd (1978), 56 Ohio St.2d 197, 200. In Ohio, this right is implemented by statutes which impose a duty on the state to bring a defendant who has not waived the rights, to trial within the times specified. When reviewing the legal issues presented in speedy trial claim, we must strictly construe the relevant statutes against the state. Brecksville v. Cook (1996), 75 Ohio St.3d 53, 57.
 {¶ 160} A person charged with a felony shall be brought to trial within 270 days of the date of the arrest. R.C. 2945.71(C)(2). If that person is held in jail in lieu of bail, then each day of custody is counted as three days, and thus, must be brought to trial within ninety days. R.C. 2945.71(E). State v. Palmer, 112 Ohio St.3d 457,2007-Ohio-374, at ¶ 11, citing State v. Sanchez, 110 Ohio St.3d 274,2006-Ohio-4478, at ¶ 7. However, we note that R.C. 2945.71 et seq. applies to defendants generally, while R.C. 2941.401 applies to defendants who are imprisoned.
 {¶ 161} The standard of review of a speedy trial issue is to count the days of delay chargeable to either side and determine whether the case was tried within the *Page 34 
 {¶ 162} time limits * * *. State v. Blumensaadt, 11th Dist. No. 2000-L-107, 2001-Ohio-4317, at ¶ 16.
 {¶ 163} In the case sub judice, Dunbar was indicted on January 5, 2005. However, it is undisputed that his speedy trial rights began to run on December 1, 2004, which is the day he was arrested for the domestic violence charge in Cleveland Municipal Court. "`When new and additional charges arise from the same facts as did the original charge, and the state knew of such facts at the time of the initial indictment, the time within which trial is to begin on the additional charges is subject to the same statutory limitations period that is applied to the original charge.'" State v. Lewis (March 7, 1985), Cuyahoga App. No. 48342, 1985 Ohio App. LEXIS 6018, at 4-5, quoting State v. Clay (1983),9 Ohio App.3d 216, syllabus. It is also undisputed that Dunbar was incarcerated from the time he was arrested in the misdemeanor case, which continued throughout the relevant duration of the felony case.
 {¶ 164} The state argues that because Dunbar failed to appear at his arraignment on January 20, 2005, that it tolled his speedy trial time until the capias was recalled on March 25, 2005. We disagree.
 {¶ 165} The docket clearly shows that the state sent notice of the indictment to an address on East 114th Street, which is the same address recorded for the victim.
 {¶ 166} The state did so because it claims that it was Dunbar's last *Page 35 
known address, despite the fact that there was an order prohibiting Dunbar from having any contact with the victim.
 {¶ 167} R.C. 2945.72(A) provides that the time within which an accused must be brought to trial may be extended by: "[a]ny period during which the accused is unavailable for hearing or trial, by reason of other criminal proceedings against him, within or outside the state, by reason of his confinement in another state, or by reason of the pendency of extradition proceedings, provided that the prosecution exercisesreasonable diligence to secure his availability[.]" (Emphasis added.)
 {¶ 168} In State v. Boone, 8th Dist. No. 81155, 2003-Ohio-996, this court was faced with an analogous situation.[10] Boone was indicted on charges while she was incarcerated in Ohio for another crime. The state sent notice of her indictment to her last known address. We stated:
 {¶ 169} "[i]n the case at bar, the record contains no evidence that the state made any effort beyond attempting service at an east side address. `It is well-settled that the state's mailing of a summons and a capias to a defendant's last known address does not comport with the requirement of "reasonable diligence."' *Page 36 State v. Riemer (Sept. 6, 2001), [8th Dist.] No. 78952, 2001 Ohio App. LEXIS 3957, at 9. As this court noted in Riemer, `"we are cognizant that the state may be unaware that an indictee is already imprisoned on a different charge, and therefore conclude that the state meets its burden * * * if it exercises `"reasonable diligence'" to discover if the indictee is imprisoned within the state."' Id, quoting State v. Miller (1996),113 Ohio App.3d 606, 609 * * *." (Parallel citation omitted.)
 {¶ 170} We further reiterated that:
 {¶ 171} "[t]his court has consistently held that the state must make a reasonable effort to contact an incarcerated defendant after indictment.[11] Although the statute does not explicitly impose an affirmative duty on the state to notify defendant of the charges against her, `the statute would have no meaning if the state could circumvent its requirement by not sending notice of an indictment to the warden of the institution where the accused is imprisoned.'" Id., quotingFloyd, at 7-8. *Page 37 
 {¶ 172} The case sub judice presents an even stronger case for requiring the prosecutor to send notice of the indictment to the institution where a defendant is incarcerated. Dunbar was incarcerated in the Cleveland Workhouse — for a conviction arising out of the sameset of facts for which he was indicted by the state. We find it somewhat incredulous that under the facts of this case, the state was not aware that Dunbar was in the Cleveland Workhouse. Even assuming it did not know, with reasonable diligence and little effort, it could have discovered his whereabouts.
 {¶ 173} The Supreme Court has consistently held that the speedy trial statutes are to be strictly construed against the state.Brecksville, supra. In light of this mandate, and considering the reasons we set forth in the preceding paragraphs, we conclude that the state did not exercise due diligence when it only sent notice of the indictment to Dunbar's last known address.
 {¶ 174} Nevertheless, Dunbar's speedy trial rights were not violated. Since he was incarcerated on another charge, the triple count provision under R.C. 2945.71(E) does not apply.
 {¶ 175} In State v. MacDonald (1976), 48 Ohio St.2d 66, paragraph one of the syallabus, the Supreme Court of Ohio held that the triple count provision applies only to defendants "held in jail in lieu of bailsolely on the pending charge." *Page 38 
(Emphasis added.) The McDonald court pointed out that because the defendant was in jail on a different charge, that "he did not meet either of the requirements that are concurrently necessary for invoking the triple count: (1) being held in jail `in lieu of bail,' and (2) being held in jail `on the pending charge.'" Id. at 69. The reasoning behind this requirement is that `"if the accused would remain incarcerated even after the pending charge was dropped, the (triple count) provision should not apply.'" State v. Hubbard (1995),104 Ohio App.3d 443, 445.
 {¶ 176} Here, when the indictment was issued, and throughout the duration of case, Dunbar was serving a six-month jail term for his conviction in Cleveland Municipal Court. He would have had to remain in jail if the indictment had been dropped, and thus, it was not "in lieu of bail solely on the pending charge." As such, Dunbar was not entitled to the triple-count rule.
 {¶ 177} Since Dunbar was incarcerated, R.C. 2941.401 applies, and thus, the state had one-hundred eighty days to bring him to trial from the date of his arrest (since the prosecutor did not exercise reasonable diligence).[12] Dunbar entered a plea of guilty on June 13, 2005, one hundred and ninety-five days after his arrest.[13] *Page 39 
 {¶ 178} From December 1, 2004 until April 12, 2005, when Dunbar filed a request for discovery and bill of particulars, he had accumulated one hundred thirty-three days toward his speedy trial time. In State v.Brown, 98 Ohio St.3d 121, 2002-Ohio-7040 at [23-26, holding that a demand for discovery or a bill of particulars is a tolling event pursuant to R.C. 2945.72(E), the Supreme Court stated:
 {¶ 179} "[discovery requests by a defendant divert the attention of prosecutors from preparing their case for trial, thus necessitating delay. If no tolling is permitted, a defendant could attempt to cause a speedy trial violation by filing discovery requests just before trial. * * * Further, prosecutors could be forced to make hurried responses to discovery requests to avoid violating the speedy trial statute. We conclude that allowing a defendant's discovery requests to toll the running of the speedy trial period is the most sensible interpretation of R.C. 2945.72(E)."
 {¶ 180} Thus, Dunbar's speedy trial time was tolled until the state responded, which was May 4, 2005, for twenty-two days (April 12 — May 4). Subtracting this number from one hundred ninety five, Dunbar's speedy trial time was one hundred seventy-three days. Thus, without taking into consideration the *Page 40 
effect of Dunbar's other motions, his speedy trial rights were not violated. Dunbar's sixth assignment of error lacks merit.
 {¶ 181} Therefore, appellant's first, third, fourth, fifth and sixth assignments of error are without merit. His second assignment of error is sustained in part. The judgment of the Cuyahoga County Court of Common Pleas is reversed and remanded for further proceedings consistent with this opinion. Upon remand, the trial court is instructed to vacate Dunbar's guilty plea.
It is ordered that appellant recover from appellee costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY JANE BOYLE, JUDGE
JAMES J. SWEENEY, P.J. and KENNETH A. ROCCO, J., CONCUR
[1] At the time he was sentenced in the case sub judice, he had already served his jail term for the misdemeanor domestic violence.
[2] Dunbar's first four assignments stem from his brief which was filed by his counsel of record. His final two assignments originate from his pro se brief.
[3] It is not clear from the record in the case sub judice what section of R.C. 2919.25 Dunbar was convicted of in the municipal court.
[4] He was only convicted of one the abduction charges.
[5] Restraint of liberty has been construed to mean "to limit one's freedom of movement in any fashion for any period of time." State v.Wingfield (Mar. 7, 1996), 8th Dist. No. 69229, 1996 Ohio App. LEXIS 867, at 6.
[6] Dunbar's counsel argued that Lovejoy was reversed by the Sixth Circuit Court of Appeals. We agree that in Lovejoy v. Collins (C.A.6 2002), 54 Fed. Appx. 617, the Sixth Circuit essentially reversed the Supreme Court of Ohio when it granted Lovejoy's writ of habeas corpus. Id. at 620-621. However, the law regarding collateral estoppel cited here is still good law. The Sixth Circuit determined that collateral estoppel applied to bar Lovejoy's subsequent prosecution and resulting conviction of aggravated murder committed during the course of a felony. It reasoned that because his first trial had resulted in a hung jury on the issues of identity and intent to kill, that these issues werepreviously decided in Lovejoy's favor and could not be relitigated.
[7] On October 18, 2005, the trial court issued a judgment stating simply that "motion to set aside conviction is denied." If appellant filed a motion to set aside his conviction, it is not in our record on appeal.
[8] We note that in his fourth assignment of error, Dunbar maintains that his counsel was ineffective, but not with respect to the plea negotiations.
[9] Especially in light of the fact that Dunbar had already served a six-month jail term on the conviction of domestic violence in municipal court.
[10] In Boone, this court was addressing a defendant's speedy trial rights and a prosecutor's reasonable diligence under R.C. 2941.401, which requires an incarcerated defendant to send "written notice and request for final disposition" to the warden having custody of him or her, who then shall promptly forward the notice to the prosecuting attorney. Once a defendant causes notice to be delivered to the prosecutor, "he shall be brought to trial within one hundred eighty days." We believe the same reasoning applies to a prosecutor's reasonable diligence under R.C. 2945.72(A).
[11] State v. Wangul, 8th Dist. No. 79393, 2002-Ohio-589; State v.Rivas, 8th Dist. No. 78166, 2001 Ohio App. LEXIS 2075; Riemer, supra;State v. Davis, 8th Dist. No. 52030, 1987 Ohio App. LEXIS 6916;State v. Floyd, 8th Dist. No. 39929, 1979 Ohio App. LEXIS 10194.
However, as noted in Boone at ¶ 21, there is a conflict between the districts on this issue of "whether the state has a duty to exercise reasonable diligence in notifying an incarcerated defendant of the indictment against him. The Ninth Appellate District consistently holds that unless an incarcerated defendant follows the requirements of R.C.2941.401, regardless of whether the prosecutor made any effort to serve the defendant in jail, the speedy trial time is not triggered [State v.Grant (1995), 103 Ohio App.3d 28]. The Second [State v. Benson (Feb. 27, 1990), 2d Dist. No. 11374, 1990 Ohio App. LEXIS 714], Eleventh [State v. Miller (1996), 113 Ohio App.3d 606], and Twelfth Districts [State v. Himes (Dec. 12, 1988), 12th Dist. No. CA88-01-007, 1988 Ohio App. LEXIS 4877] have also followed this view."
[12] When the state does not exercise reasonable diligence to notify a defendant who is incarcerated under R.C. 2941.401, the speedy trial time calculation generally begins at the time of the indictment.Boone, supra, at ¶ 28 (noting that "[o]f the courts holding that the state has to exercise reasonable diligence, there is a disagreement concerning when that speedy trial time begins. This court, along with the Fifth and Tenth Districts, has held the time starts at indictment. * * * The Eleventh District, on the other hand, has held that the time starts at arraignment. * * * The Fourth District has held that it depends upon the circumstances."). Id. However, in the case sub judice, it begins at the time of the arrest for the reasons we set forth previously.
[13] If this court accepted the state's brief as to the total number of speedy trial days it took until Dunbar pleaded guilty, two hundred twenty days, then we would have to conclude that Dunbar's speedy trial rights were violated. However, our review is de novo. Thus, the state's calculation was incorrect. *Page 1